LEVINE, J.
Appellant, Allstate Insurance Company, appeals from a final judgment and raises several issues on appeal. Appellee, Anthony Marotta, cross-appeals the trial court’s denial of his motion to tax costs. As to the direct appeal, we write on two issues and find all other issues to be without merit. We reverse the final judgment as we find that the trial court erred in not granting Allstate’s motion for new trial based on Marotta’s improper closing argument and improper impeachment of Allstate’s expert witness. Marotta’s cross-appeal is moot as a result of our decision here.
Marotta was hit head on by an uninsured motorist. Marotta filed suit against the uninsured motorist, who defaulted, and against Allstate, which was Marotta’s uninsured motorist insurance carrier.
After trial, the jury awarded Marotta $441,000. The jury found that Marotta had incurred $37,000 in past medical expenses and would incur $194,000 in future medical expenses. The jury also found that Marotta had sustained a permanent injury and awarded $40,000 and $170,000 in past and future noneconomic damages, respectively.
Allstate moved to limit the final judgment to the policy limits, and Marotta moved to tax costs under section 57.041, Florida Statutes (2010). In opposition, Allstate relied on a provision of its policy with Marotta which stated that in the event of a disagreement between Allstate and Marotta as to a person’s right to recover or the amount of damages, “[cjosts, including attorney fees, are to be paid by the party incurring them.” The trial court agreed with Allstate and entered judgment for $100,000, the amount of the policy limits.
Allstate appeals the final judgment and denial of its motion for new trial. Marotta cross-appeals the denial of his motion to tax costs.
Allstate first argues that a new trial is warranted due to improper argument made by Marotta’s counsel during closing and rebuttal argument. In closing argument, over objection, Marotta argued, “Allstate denied the undisputed medical evidence. They denied accepting responsibility. I ask you, is that what it means to be in good hands?” Marotta stated that everyone was equal under the law, “whether you’re a regular citizen or whether you’re a powerful insurance company like Allstate,” to which an objection was overruled. The trial court sustained an objection when Marotta asked whether one of *959 Allstate’s doctors “was enlisted as part-of an effort to manufacture a defense,” and overruled an objection that Allstate can pay doctors who know what Allstate “really wants.”
Marotta, during rebuttal, argued:
Now, what is repentance? We know what repentance is. Repentance is— it’s — It’s three-fold. It’s not enough to say, Golly, gee, okay, now five years almost after this accident, yeah, the uninsured motorist in this case was negligent and caused harm and losses to Anthony Marotta and Lori Marotta. That’s not enough. We know what the other two steps are. There are two other steps. The second step is to accept full responsibility, full responsibility. Not part of the responsibility, to accept full responsibility.
And the third step is to do everything necessary to make it right, to do everything necessary to make it right. Not part of it all of it. Now, you got to do all you can to that person that that uninsured motorist hurt to make it right.
Then, over Allstate’s objection, Marotta argued that Allstate “consistently, in this case, didn’t want to accept the responsibility at all for causing the accident, the uninsured motorist carrier and they still don’t want to accept the responsibility to ... make up all of the losses and harms caused by this automobile crash.” Marotta argued further, also over objection, that “Allstate could have come to this trial saying, I’m sorry, I want to fairly pay you for the injuries ... that the uninsured motorist carrier caused, but they didn’t.”
Marotta, without objection, called Allstate’s experts “paid opinion courtroom doctors” and, over objection, stated that Allstate “made up issues.” Several times, generally without objection, Marotta stated that Allstate had built up “straw men.” Marotta returned to the point that Allstate did not “want to accept full responsibility,” arguing over objection that Allstate, in order to protect its money and to prevent “full repentance,” paid people “$750 an hour, $500 an hour.”
Marotta argued, over objection, that the accident “created a debt” that it was time for Marotta to collect. Toward the end of Marotta’s rebuttal, Marotta requested that the jury “make Allstate repent, make them take responsibility for what was caused by that uninsured motorist and make them pay all of the harms and losses caused.”
Allstate also objects to what it characterizes as improper impeachment of one of its expert witnesses, Dr. Robert Lins.
Marotta issued a trial subpoena to Dr. Lins, a neurologist who ' was an expert witness for Allstate. The subpoena requested Dr. Lins to provide “[a]ny document or documents that show how many times Allstate and their attorneys have retained your services” and “[a]ny document or documents to indicate the total amount of fees that Allstate has paid to you in the past five years.” Before Dr. Lins testified, counsel for Allstate informed the court that Allstate had provided its tax identification number records to Marotta in discovery, which counsel stated included payments for many items such, as compulsory medical examinations without differentiating between items. These records with respect to Dr. Lins were introduced into evidence. During Dr. Lins’s testimony, Marotta asked whether he would dispute that Allstate -wrote him thirty-eight checks in 2008. When Dr. Lins stated that his office keeps track of that information, but that he personally does not, Marotta responded,
[Wjhen you come into court and you know that lawyers may ask you that because it’s up to these folks to judge credibility of witnesses, did you say, *960 Well, let me figure this out and I want you to compile all of these things, I know he’s going to ask me that, so you can share that with these folks?
Allstate objected stating that the witness was not required to compile these types of records.
Marotta continued to ask Dr. Lins about whether he compiled “all of this information” in preparation for trial, since he knew that the jury would have to determine his credibility. Dr. Lins deferred to “the record” that his office had sent to Marotta, and Marotta responded that Dr. Lins was not correct, because his office had sent him the number of times that Dr. Lins “gave a deposition at tr[ia]l” which did not comprise all of the times that Dr. Lins provided services for Allstate. Allstate, at sidebar, objected that “[t]he case law requires a party to produce the tax identification number reports, the tallies of how much has been paid. It does not require the experts to.” The trial court overruled the objection.
Allstate moved for a mistrial as to Mar-otta’s closing argument, and later moved for a new trial. The trial court denied these motions.
“A trial court’s order granting or denying a motion for a new trial based on either objected-to or unobjected-to improper argument is reviewed for abuse of discretion.” Engle v. Liggett Grp., Inc., 945 So.2d 1246, 1271 (Fla.2006). We apply different standards to a ruling on a motion for new trial based on improper closing argument depending on whether the comments challenged as improper are preserved or unpreserved. For preserved comments, “the trial court should grant a new trial if the argument was ‘so highly prejudicial and inflammatory that it denied the opposing party its right to a fair trial.’ ” Id. (citation omitted). For unpre-served comments, a new trial should be granted if the four-part test of Murphy v. International Robotic Systems, Inc., 766 So.2d 1010 (Fla.2000), is satisfied, which is that the comments must be improper, harmful, incurable, and damage the fairness of the trial such that the public interest requires a new trial. We review the trial court’s rulings on Allstate’s objections to questioning of Dr. Lins for an “abuse of discretion as limited by the rules of evidence.” Benjamin v. Tandem Healthcare, Inc., 93 So.3d 1076, 1081 (Fla. 4th DCA 2012).
It is improper for counsel to suggest in closing argument that a “defendant should be punished for contesting damages at trial” or that defending a “claim in court” is improper. Intramed, Inc. v. Guider, 93 So.3d 503, 507 (Fla. 4th DCA 2012). See also Fasani v. Kowalski, 43 So.3d 805, 809 (Fla. 3d DCA 2010) (“[I]t is improper for an attorney to ... suggest that a party should be punished for contesting a claim.”).
Marotta’s comments urged the jury to punish Allstate for defending against Marotta’s claim in court and exceeded the scope of permissible argument. See State Farm Mut. Auto. Ins. Co. v. Thorne, 110 So.3d 66, 74 (Fla. 2d DCA 2013) (“Objectionable was ... counsel’s contention in closing that the defendants’ evidence and argument were an attempt ‘to avoid responsibility’ and, as a result, the defendants exhibited shameful conduct.”). These improper comments were numerous, even when viewed in context, and made the argument such that it was not designed to “prompt a ‘logical analysis of the evidence in light of the applicable law.’ ” Intramed, 93 So.3d at 507 (citation omitted). While only some of the comments were properly preserved for our review, comments such as Allstate “made up issues” and “manufactured” a defense *961 improperly denigrated Allstate’s defense and counsel. See Carnival Corp. v. Pajares, 972 So.2d 973, 977 (Fla. 3d DCA 2007). In addition, we agree with Allstate that Marotta’s objected-to comment that “[t]here was a debt created ... by that uninsured motorist” ran afoul of the rule that an uninsured motorist insurance carrier is “entitled to raise and assert any defense that the uninsured motorist could have argued.” State Farm Mut. Auto. Ins. Co. v. Revuelta, 901 So.2d 377, 380 (Fla. 3d DCA 2005).
Turning to Marotta’s impeachment of Dr. Lins, Florida Rule of Civil Procedure 1.280(b)(5)(A)(iii) provides that “[a] party may obtain,” with respect to “a person expected to be called as an expert witness at trial”: (1) the expert’s “scope of employment in the pending case and the compensation for such service”; (2) “[t]he expert’s general litigation experience, including the percentage of work performed for plaintiffs and defendants”; (3) “[t]he identity of other cases, within a reasonable time period, in which the expert has testified by deposition or at trial”; and (4) “[a]n approximation of the portion of the expert’s involvement as an expert witness, which may be based on the number of hours, percentage of hours, or percentage of earned income derived from serving as an expert witness.” However, “[a]n expert may be required to produce financial and business records only under the most unusual or compelling circumstances and may not be compelled to compile or produce nonexistent documents.” Id.
We find that Marotta’s questioning of Dr. Lins was improper as to the absence of detailed records showing the number of and payment for compulsory medical examinations performed by Dr. Lins for Allstate. See Elkins v. Syken, 672 So.2d 517 (Fla.1996). Dr. Lins was not required to produce information on the specific topics referred to in the questioning, which had been produced by Allstate, the party, in the tax identification number report. Further, the impeachment used by Marotta, questioning Dr. Lins on his failure to physically bring requested items with him to court, rather than on eliciting testimony which would tend to show Dr. Lins’s bias in favor of Allstate, was equally inappropriate. See, e.g., Sanchez v. Nerys, 954 So.2d 630, 632 (Fla. 3d DCA 2007) (finding questioning of expert regarding the expert’s maintenance of computer records documenting cases in which expert served as an expert witness “went beyond permissible grounds on the issue of bias”).
We find that the cumulative errors in this case, including both the improper closing arguments and improper impeachment on cross-examination of Dr. Lins, when viewed together, created reversible error. The closing argument in this case, like in Intramed, “shifted the focus of the case from compensating the plaintiff to punishing the defendant.” 93 So.3d at 507. “The purpose of damages here was to compensate, not to make the defendant care, ‘take responsibility,’ or say it was sorry.” Id. The error here is similar to the quantity of error in Intramed, where we reversed a final judgment in a negligence action based on the plaintiffs improper closing argument and untimely disclosure of an expert witness.
Further, in evaluating whether the errors were harmless, we may consider “the cumulative effect” of preserved and unpreserved error. Howard v. Palmer, 123 So.3d 1171, 2013 WL 950040 (Fla. 4th DCA 2013). Taking into account additional, unpreserved improper closing argument comments, we are unable to conclude that the errors, taken together, were harmless. Special v. Baux, 79 So.3d 755 (Fla. 4th DCA 2011) (en bane), rev. granted sub *962 nom., Special v. W. Boca Med. Ctr., 90 So.3d 273 (Fla.2012).[1] We, therefore, reverse the final judgment based on the improper closing argument by Marotta, in combination with the improper cross-examination of Dr. Lins.
We find that Marotta’s cross-appeal is moot as a result of our decision. However, we nevertheless address the cross-appeal in an effort to conserve judicial resources, as the issue raised will likely have to be addressed in any subsequent trial.
As suggested in Foremost Insurance Co. v. Warmuth, 649 So.2d 939, 941 (Fla. 4th DCA 1995), the possibility that an uninsured motorist claimant’s recovery could be consumed entirely by costs could serve to chill an uninsured motorist claimant’s motivation for bringing suit. Because statutory uninsured motorist coverage is meant to compensate the insured for a deficiency in the tortfeasor’s coverage, the statute was intended to allow the same recovery that would have been available from the tortfeasor had the tortfeasor been insured to the same extent as the insured. See Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077, 1081 (Fla.1978). Thus, the provision in Allstate’s policy providing that costs are to be paid by the party incurring them is unenforceable, as it would not provide the insured with the same recovery had the tortfeasor been insured to the same extent of the insured. See Am. Indem. Co. v. Comeau, 419 So.2d 670, 672 (Fla. 5th DCA 1982) (“[A] provision in any arbitration clause of an insurance policy providing uninsured motorist coverage requiring each party to bear his own costs is an invalid attempt to reduce statutory coverage.”). Consistent with Foremost, “an uninsured motorist carrier can be liable for taxable costs above and beyond its stated policy limits.” Foremost, 649 So.2d at 941. Allstate shall be liable for costs should Marotta prevail in a new trial.
In summary, we find that the trial court erred in denying Allstate’s motion for new trial, and we reverse and remand for a new trial.

Reversed and remanded for a new trial.

WARNER and CIKLIN, JJ„ concur.

. Special defined the standard for harmless error in civil cases by requiring "the beneficiary of the error in the trial court” to "show on appeal that it is more likely than not that the error did not influence the trier of fact and thereby contribute to the verdict.” 79 So.3d at 757. In contrast, prior to Special, in determining whether the comments were harmless, we looked only to whether the improper comments "either individually or collectively, were so prejudicial as to deny appellants a fair trial.” See Philippon v. Shreffler, 33 So.3d 704, 710 (Fla. 4th DCA 2010).