DAMOORGIAN, C.J.
Philip Morris USA, Inc. (“PM USA”), Lorillard Tobacco Company (“Lorillard”) and Liggett Group, LLC (“Liggett”) (collectively referred to as the “Tobacco Companies”) appeal the trial court’s final judgment entered in favor of Mary Tullo, as surviving spouse and personal representative of the estate of her deceased husband, Dominick Tullo. The Tobacco Companies raise three issues on appeal. First, they contend that the trial court erred in giving a concurring cause jury instruction on class membership. Next, they assert that the trial court erred in denying their motion for a new trial due to improper comments made by Mrs. Tullo’s counsel during closing arguments. Finally, they argue that the trial court misapplied the Engle[1] findings. Liggett separately argues that it is not bound by the Engle findings. Mrs. Tullo cross appeals the jury’s finding of no liability as it relates to R.J. Reynolds Tobacco Company (“RJR”), arguing that the verdict was against the manifest weight of the evidence. We affirm in all respects.

Background

The instant case commenced as one of the Engle progeny cases. See Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006). By way of background, Mrs. Tullo filed a complaint against the Tobacco Companies for strict liability, negligence, conspiracy to commit fraud, fraudulent concealment, breach of express warranty, and breach of implied warranty, seeking to recover damages for the death of her husband, a longtime smoker. The complaint admitted that Mr. Tullo bore some measure of fault for his smoking-related injuries and death.
Prior to the start of trial, the parties stipulated that lung cancer was the cause of Mr. Tullo’s death and that smoking was the cause of his lung cancer. The court also considered numerous evidentiary motions. One such motion was the Tobacco Companies’ collective motion to prevent Mrs. Tullo from comparing them to criminals. Mrs. Tullo’s counsel agreed “not to do that,” and the court entered an order granting the Tobacco Companies’ motion. Notably, the court emphasized that all of its pre-trial rulings were preliminary in nature and could be re-argued as the trial progressed.
The ease proceeded to trial in two phases and in the manner we approved in R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707, 714 (Fla. 4th DCA 2011). In the first phase, the jury was required to determine whether Mr. Tullo was a member of the Engle class, i.e. whether he was addicted to cigarettes, and, if so, whether the Tobacco Companies’ conduct was the legal cause of his death. Finally, the jury was asked to determine compensatory damages. If the jury found that the Tobacco Companies were grossly negligent, then the trial would proceed to the second phase for the purposes of determining punitive damages.
In the first phase, Mrs. Tullo presented substantial evidence of Mr. Tullo’s smoking history and medical background, as well as expert testimony regarding his addiction. Mrs. Tullo’s experts testified regarding the addictive nature of nicotine, comparing its addictive properties to those found in heroin and cocaine. The evidence presented established that Mr. Tullo’s cigarette brand of choice was Parliament (PM USA), but that at some points in his life, he smoked Marlboros (PM USA), Chester *598 fields (Liggett) and Kents (Lorillard). There was some evidence that he may have also smoked Lucky Strike, Camel, and Pall Mall brand cigarettes (all RJR) as well.
During closing arguments, Mrs. Tullo’s counsel made several comments regarding the Tobacco Companies’ alleged bad behavior. Those comments were comprised of the following statements:
• “When the defense gets up and gives their closing, I can assure you that they’re not going to take any responsibility whatsoever, even though their companies told the American public back in 1954 they would.”
• “So what I ask you to do throughout this trial, throughout your deliberations is hold them to that promise. Hold them to that responsibility that they took on behalf of their smokers. Because they took it. They accepted the responsibility in that Frank Statement. They accepted that responsibility. And what we’re asking you to do today in this courtroom is hold them to that responsibility. If you’re going to go out there and accept the responsibility, you’ve got to be man enough or in a corporate situation, business-like enough to honor your obligations.”
• “What they’ve done in the past 50 years, because think about this, and it’s even been longer, what they did for the past 50 plus years saying, it’s not proven, you know, it’s not addictive, it doesn’t cause lung cancer, now at least they acknowledge, as they did in the stipulation, that it is addictive and it causes lung cancer, but you know what they’re doing in this courtroom, they’re saying, yeah, it’s addictive, but you know what, Dominick Tullo, he wasn’t addicted. Yeah it causes lung cancer, the addiction causes lung cancer, but not with Dominick Tullo. They’re doing the same thing. Don’t let them do it to you. Please. Hold them to their responsibility.”
• “You saw the evidence throughout this trial that what each one of these Defendants acting in concert together, they put a message out there that said, keep smoking, it’s okay. There are no health risks, and if there are, we’ll take it out, we’ll find it, we’ll take it out. And when you tell an addict something like that, that’s like telling a heroin addict, hey, listen, use these clean needles and it will be okay, it won’t hurt you, it will be all right.”
• “And [Mr. Tullo] started filling out these things from Marlboro that you saw today and you saw the other day so he could get free cigarettes. Free cigarettes. And who would send him those things? Philip Morris, the tobacco companies. Knowing their product was going to kill him, knowing he was addicted, because that’s what addicted smokers do, hey get free cigarettes now, let’s go for it ... You’re an addicted smoker, that’s like giving a bag of heroin to a drug addict. Free coupons, give me that, I’ll fill that out.”
The Tobacco Companies did not raise a contemporaneous objection to any of these comments, but did move for a mistrial and a new trial. The court denied both of the motions.
At the conclusion of the first phase, the court instructed the jury on the threshold issue of Engle class membership and the issues of liability, comparative fault, compensatory damages, and entitlement to punitive damages. On the class membership issue, the court instructed the jury to determine whether Mr. Tullo was addicted to cigarettes containing nicotine, and if so whether addiction was a legal cause of his death, and provided the following concur *599 ring cause instruction on class membership:
In order to be regarded as the legal cause of death, addiction need not be the only cause. Addiction may be a legal cause of death even though it operated in combination with some natural cause or some other cause if such other cause occurs at the same time as the addiction and if the addiction contributes substantially to producing such death.
The jury was also provided with a comparative fault instruction regarding Mr. Tul-lo’s conduct.
The jury found that Mr. Tullo was a member of the Engle class, and returned a verdict in Mrs. Tullo’s favor on her claims for strict liability, negligence, and breach of implied warranty against PM, Lorillard, and Liggett. It returned a verdict in favor of RJR on all counts, and found in favor of the Tobacco Companies on Mrs. Tullo’s claims for fraudulent concealment, conspiracy to commit fraudulent concealment and gross negligence. Thus, the trial did not proceed to phase two. The jury allocated 45% of the fault to Mr. Tullo, 45% to PM, and 5% each to Lorillard and Liggett. The jury awarded total damages of $4.5 million, which was reduced to $2,475,000 based on Mr. Tullo’s comparative fault. This appeal follows.

Analysis

We affirm the jury’s verdict of no liability as to RJR, and the court’s application of the Engle findings to Liggett with no further comment. We also affirm the court’s application of the Engle findings to the remainder of the Tobacco Companies pursuant to our decision in Brown and our supreme court’s decision in Philip Morris USA, Inc. v. Douglas, 110 So.3d 419 (Fla.2018). We write only to address the concurring cause jury instruction and Mrs. Tullo’s counsel’s closing comments.

a) The Concurring Cause Jury Instruction

The Tobacco Companies argue that the court erred in giving a concurring cause instruction regarding class membership because the only possible other cause of Mr. Tullo’s illness besides his addiction to cigarettes was his own negligence in failing to quit smoking. PM USA, Lorillard, and Liggett maintain that a plaintiffs own negligence cannot warrant a concurring cause instruction, and thus argue that the court reversibly erred in giving it to the jury. We disagree.
First, we note that a trial court has wide discretion regarding jury instructions, and its decision to give an instruction should not be disturbed on appeal absent prejudicial error. Goldschmidt v. Holman, 571 So.2d 422, 425 (Fla.1990). Prejudicial error only occurs when the error results in a miscarriage of justice, or in other words, the instruction was calculated to mislead or confuse the jury. Id. (quoting Fla. Power & Light v. McCollum, 140 So.2d 569, 569 (Fla.1962)).
Florida courts generally define concurring causes as “two separate and distinct causes that operate contemporaneously to produce a single injury.” Goldschmidt, 571 So.2d at 424 (citation omitted). “Although the term ‘concurring’ suggests that such causes of damage must occur ‘simultaneously,’ it has been held that temporally preceding conditions can conjoin with a defendant’s subsequent alleged negligence.” Zigman v. Cline, 664 So.2d 968, 970 (Fla. 4th DCA 1995). “If a defendant’s negligence operates in combination with the negligent act of another or a natural cause, ... the concurrent causation instruction should be given.” Hart v. Stern, 824 So.2d 927, 930 (Fla. 5th DCA 2002) (citations omitted). However, when the plaintiffs own negligence is the only *600 other alleged concurring cause, a concurrent cause instruction is not mandatory. See La Petite Acad. v. Kamerzel, 751 So.2d 641, 642-43 (Fla. 5th DCA 1999) (holding that plaintiff was not entitled to a new trial based on the fact that the trial court refused to provide a concurring cause instruction where no other extraneous cause other than plaintiffs own negligence was established). The rationale for this rule is that when a plaintiffs own negligence is at issue, a comparative fault instruction encompasses the applicable law. Thus, the instruction is not necessary. See Robinson v. Gerard, 611 So.2d 605, 607 (Fla. 1st DCA 1993) (acknowledging “the well-established rule that a trial court’s refusal to give requested instructions on issues adequately covered by the court’s instructions is not error”).
However, just because the instruction may be redundant does not mean that the court’s decision to provide it is erroneous. Indeed, there is not one Florida case holding that giving a concurrent cause instruction when the plaintiffs own negligence is the only alleged concurring cause merits reversal. Further, at least two of our sister courts have rejected the Tobacco Companies’ argument that giving the concurring cause instruction as it relates to class membership is reversible error. Philip Morris USA v. Douglas, 83 So.3d 1002, 1005-06 (Fla. 2d DCA 2012), disapproved in part on other grounds, 110 So.3d 419 (Fla.2013) (rejecting tobacco company defendants’ argument that the trial court erred in giving a concurring cause instruction in relation to the question of class membership); Lorillard Tobacco Co. v. Mrozek, 106 So.3d 479, 480 (Fla. 1st DCA 2012) (rejecting without comment the tobacco companies’ argument that the court erred in providing the jury with a concurrent cause instruction). We hold the same, and affirm on this issue.

b) Closing Comments

Next, we write to address some of the comments made by Mrs. Tullo’s counsel during closing arguments. As outlined above, Mrs. Tullo’s counsel made several comments to the effect that the Tobacco Companies failed to take responsibility for their actions and comparing their distribution of cigarettes to the distribution of heroin. The Tobacco Companies argue that these comments had the effect of denying them their right to a fair trial.
As our supreme court explained in Murphy v. International Robotic Systems, Inc.:
The purpose of closing argument is to help the jury understand the issues in a case by “applying the evidence to the law applicable to the case.” Attorneys should be afforded great latitude in presenting closing argument, but they must “confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence.” Moreover, closing argument must not be used to “inflame the minds and passions of the jurors so that their verdict reflects an emotional response ... rather than the logical analysis of the evidence in light of the applicable law.”
766 So.2d 1010, 1028 (Fla.2000) (internal citations omitted).
“If the issue of an opponent’s improper argument has been properly preserved by objection and motion for mistrial, the trial court should grant a new trial if the argument was so highly prejudicial and inflammatory that it denied the opposing party its right to a fair trial. To justify granting a motion for a new trial based on unobject-ed-to improper argument, the trial court must find that the improper argument is of such a nature as to reach into the validity of the trial itself to the extent that the *601 verdict could not have been obtained but for such comments.” Engle, 945 So.2d at 1271 (internal citations and quotations omitted).
Here, the Tobacco Companies failed to raise a contemporaneous objection to any of the challenged comments. The Tobacco Companies argue that the court’s pre-trial ruling on their motion to prevent Mrs. Tullo from comparing them to criminals should function as a contemporaneous objection to the heroin comments; however, the trial court was explicit that its pretrial rulings were not final. It is well established that pre-trial evidentiary rulings preserve an issue for appeal only if they are definitive and unequivocal as opposed to preliminary in nature. See Williams v. Lowe’s Home Ctrs, Inc., 973 So.2d 1180, 1185-86 (Fla. 5th DCA 2008) (holding that absent a contemporaneous objection, a non-definitive ruling on a motion in limine does not preserve an issue for appellate review). Thus, the trial court’s preliminary ruling on the Tobacco Companies’ motion to prevent Mrs. Tullo from comparing them to criminals did not negate their duty to contemporaneously object to the comments during closing.
Absent preservation of any of the objectionable comments, we are constrained in our review capacity, and can only reverse upon a showing of fundamental error. Murphy, 766 So.2d at 1027. In order to establish that fundamental error occurred, “the appellant must show: (1) that the comments were improper; (2) that the argument was harmful; (3) that the argument was incurable; and (4) that the argument so damaged the fairness of the trial that the public’s interest in our system of justice requires a new trial.” Id. at 1028-30; Aarmada Prot. Sys.2000, Inc. v. Yandell, 73 So.3d 893, 900 (Fla. 4th DCA 2011). “Harmfulness in this context also carries a requirement that the comments be so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury. Passing remarks of little consequence in the scope of a lengthy trial should find little sympathy if no contemporaneous objection is voiced. The extensiveness of the objectionable material is a factor to be considered in the harmfulness analysis.” Murphy, 766 So.2d at 1029-30.
 We agree with the Tobacco Companies that Mrs. Tullo’s counsel’s comments during closing were improper. The comments referring to the Tobacco Companies’ failure to take responsibility for their actions fall under the umbrella of our recent opinions in Allstate Insurance Co. v. Marotta, — So.3d -, 2013 WL 2420451, 38 Fla. L. Weekly D1224 (Fla. 4th DCA June 5, 2013), and Intramed, Inc. v. Guider, 93 So.3d 503, 507 (Fla. 4th DCA 2012), wherein we held that it is improper for a plaintiffs counsel to disparage the defendant for defending itself and for failing to take responsibility for its actions. Likewise the comments referring to heroin addicts were also improper. Although there was evidence in the record establishing that nicotine has similar addictive properties to heroin, the challenged closing comments did more than allude to the addictive nature of nicotine; they implied that the tobacco companies were as culpable as drug dealers.
Despite the fact that the challenged comments were improper, we hold that the Tobacco Companies failed to establish the remaining elements of harmful error. In the context of Mrs. Tullo’s entire closing argument, which was two and a half hours long, the challenged comments were limited in their extent. Cf., Marotta, — So.3d at -, 38 Fla. L. Weekly D1224 (improper closing comments were so numerous that they tainted the entire closing argument so that it was no longer designed to *602 prompt a logical analysis of the evidence). In the context of the entire trial, which was almost two weeks long, the comments were even less substantial, and were not extensive enough to taint the underlying fairness of the trial. Further, unlike in both Marotta and Intramed, where we held that improper comments were not harmless when viewed in conjunction with other preserved evidentiary errors, the Tobacco Companies have not established the presence of any additional errors in the trial. Accordingly, the challenged comments, while improper, were not so harmful on their own as to necessitate a new trial.
In arriving at our conclusion, we emphasize that we are in no way condoning the challenged remarks, and caution counsel to be vigilant in crafting closing arguments that fall within the confínes of permissibility. However, due to the lack of preservation and viewing the comments in the context of the trial as a whole, we hold that there was no harmful error, and affirm.

Affirmed.

CIKLIN and CONNER, JJ„ concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).