IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

KAREN WHITNEY,

       Appellant,

v.

R. J. REYNOLDS TOBACCO
COMPANY and PHILIP
MORRIS USA, INC.,

       Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-3709

Opinion filed December 5, 2014.

An appeal from the Circuit Court for Alachua County.
Toby S. Monaco, Judge.

Robert W. Kelley, Todd R. McPharlin and Eric S. Rosen of Kelley Uustal, PLC, Fort Lauderdale; Steven L. Brannock, Celene H. Humphries, Ceci Culpepper Berman and Tyler K. Pitchford of Brannock & Humphries, Tampa; Gregory D. Prysock and Katherine M. Massa of Morgan & Morgan, P.A., Jacksonville; Keith R. Mitnik of Morgan & Morgan, P.A., Orlando, for Appellant.

W. Randall Bassett and Frank T. Bayuk,  William L. Durham, II, and Jennifer C. Kane of King & Spalding, LLP, Atlanta; Ursula M. Henninger of King & Spalding, LLP, Charlotte, NC; Jeffrey A. Yarbrough, Robert B. Parrish and David C. Reeves of Moseley, Prichard, Parrish, Knight & Jones, Jacksonville, for Appellee R. J. Reynolds Tobacco Company.

Mark J. Heise, Stephen N. Zack, Shani Salama and Jason S. Zack of Boies, Schiller & Flexner LLP, Miami; Geoffrey J. Michael of Arnold & Porter LLP, Washington, DC; Joseph H. Lang, Jr. of Carlton Fields Jorden Burt, P.A., Tampa, for Appellee/Cross-Appellant Philip Morris USA, Inc.

THOMAS, J.

In this non-Engle[1] progeny tobacco case, Appellant appeals a directed verdict in favor of Appellees on her negligence and strict liability claims, the trial court's denial of her request for a jury instruction addressing a claim of negligent misrepresentation, and the final judgment in favor of Appellees on the claim for failure to warn. As explained below, we reverse the directed verdict and affirm as to the remaining issues without further comment.

Factual Summary

Appellant sued Appellees for negligence and strict liability, alleging that various design defects in Appellees' cigarettes increased the likelihood of Appellant becoming addicted to smoking Appellees' cigarettes and suffering cancer. Among Appellees' defenses was their claim that Appellant was comparatively at fault, which Appellant conceded at trial.

Appellant presented extensive evidence in support of her claims, including expert testimony, during the course of a lengthy trial. Appellant's expert, Dr. Burns, testified extensively about the various design changes and alleged

---

[1] Engle v. Liggett Group, Inc., 945 So. 2d 1246, 1256-57 (Fla. 2006).

2

defects in Appellees' cigarettes and the effect of these defects on smokers, including making cigarettes easier to smoke, especially for beginning smokers, thus increasing the likelihood that a person would continue to smoke and become addicted. He also testified that Appellees' cigarettes delivered potential carcinogens deeper into the lungs than regular full-flavored cigarettes. Thus, Dr. Burns opined that these defects "would increase the likelihood that [Appellant] would get cancer from smoking [Appellees'] cigarettes" and that the design changes "were a substantial contributing cause to [Appellant's] lung cancer." He testified further that the cigarettes "did not deliver, when smoked, what was promised in the marketing of those products. That is, a reduction of tar delivery and a reduction of risk."

In relevant part, during Appellees' cross-examination of Dr. Burns, he testified as follows:

> Q. . . . Are you saying that if [Appellant] had not switched to low-tar cigarettes, she would not have gotten lung cancer?
>
> A. I can't say that to a reasonable degree of medical certainty because it's not clear that there is a doubling of the risk produced by these design changes, which is what would be required to make a statement of more than 50 percent or more likely or medically more likely than not.
>
> . . .
>
> Q. Well, can you say to a reasonable degree of medical probability that if she had only smoked regular, full-

3

flavored cigarettes, she would not have gotten lung cancer? . . .

A. I can't say that in a statement that is medically more likely than not. . . .

Q. . . . [C]an you or can you not say to a reasonable degree of medical probability that if she had smoked only full-flavor cigarettes, she would not have gotten lung cancer?

. . .

A. I don't believe I can say that that would be scientifically true . . . .

At the conclusion of Appellant's case, Appellees moved for a directed verdict, arguing, *inter alia*, that Appellant failed to establish legal causation between the alleged design defects and her lung cancer. Relying on Dr. Burns' cross-examination testimony, Appellees argued that pursuant to Gooding v. University Hospital Building, Inc., 445 So. 2d 1015 (Fla. 1984), Appellant failed to meet her burden as to causation. Appellant countered that the defects in question could be a legal cause of injury, if they operated in combination with other causes, because, as Dr. Burns testified, they "substantially contribute[d]" to producing the injury.

The court agreed with Appellees, ruling that "on cross-examination, [Dr. Burns] explained that his definition of substantial contributing cause does not

4

meet the legal test that was illustrated" in Gooding.  The trial court further found that, on cross-examination, Dr. Burns "disavowed" his earlier testimony.

The jury returned with a defense verdict on the sole remaining claim of failure to warn before 1969.  Appellant's motion for a new trial was denied, and this appeal ensued.

Analysis

A trial court's ruling on a motion for directed verdict is reviewed *de novo*. Williams v. Washington, 120 So. 3d 1263, 1264 (Fla. 1st DCA 2013).  "[I]n reviewing the propriety of a directed verdict, an appellate court must weigh the facts and inferences to be drawn therefrom in the light most favorable to the person against whom judgment has been granted.  A directed verdict can be upheld only if there is **no evidence or inference from the evidence** which will support the non-moving party's position.  Moreover, a directed verdict in a negligence action should only be entered if the plaintiff **could not recover under any reasonable view of the evidence**."  Kowkabany v. Home Depot, Inc., 606 So. 2d 716, 719-20 (Fla. 1st DCA 1992) (emphasis added; citation omitted).

In a negligence or strict liability action in a tobacco case based on design defect, at issue are causation, comparative fault, and damages, regardless of whether the plaintiff is a member of the Engle class.  See R.J. Reynolds Tobacco Co. v. Martin, 53 So. 3d 1060, 1063 (Fla. 1st DCA 2010) (explaining that the court

5

in Engle decertified the class for "Phase III" of the litigation, as class treatment was infeasible, "'because individualized issues such as legal causation, comparative fault, and damages predominate . . . .'") (quoting Engle, 945 So. 2d at 1268, 1277); see also, R.J. Reynolds Tobacco Co. v. Brown, 70 So. 3d 707, 715 (Fla. 4th DCA 2011) (holding that, in post-Engle cases, "the remaining elements of the underlying claims, *i.e.* legal causation and damages, must be proven in the second phase of trial.").

In Gooding, the Florida Supreme Court stated:

> In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury. Prosser explored this standard of proof as follows:
>
>> On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is **more likely than not** that the conduct of the defendant was a **substantial factor** in bringing about the result. A **mere possibility** of such causation is not enough; and when the matter remains one of **pure speculation or conjecture**, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
>
> *Prosser, Law of Torts* § 41 (4th Ed. 1971) (footnotes omitted).

Gooding, 445 So. 2d at 1018 (citations omitted) (emphasis added). In other words, a defendant's conduct need not be the only cause of a plaintiff's injuries, or even fifty-one percent of the cause; rather, the plaintiff must present evidence that the

6

defendant's conduct was, more likely than not, **a** "substantial factor" in causing the injury. Thus, the plaintiff is not required to prove that the defendant's conduct alone was more likely than not the sole proximate cause.

Here, in directing a verdict in Appellees' favor on the issue of causation, the learned trial court erred in its interpretation of Dr. Burns' testimony and the standard for establishing causation. Dr. Burns was essentially asked whether he could say that Appellant would not have developed lung cancer **at all**, if she had only smoked regular cigarettes rather than the cigarettes with the alleged design defects. Dr. Burns replied that he could not say that, "because it's not clear that there is a doubling of the risk produced by these design changes, which is what would be required to make a statement of more than 50 percent . . . more likely than not." But this was neither the ultimate issue nor the correct legal standard for causation.

Appellant did not claim that she never would have developed lung cancer if she had smoked non-filtered, full-flavored cigarettes instead of Appellees' engineered cigarettes. Such a claim would have been unsupportable on the evidence, and Appellees themselves conceded that all cigarettes can cause lung cancer. Rather, Appellant's claim asserted that Appellees' cigarettes with the defective designs increased her risk of becoming and remaining addicted to smoking and of developing lung cancer. The design changes underlying this

7

theory included filters, chemical adjustments, and flavoring. Also, despite Appellees' marketing which suggested the contrary, their cigarettes did not have less tar than regular cigarettes, and thus were potentially more injurious to health by falsely lulling smokers into a dangerous complacency.

The "more likely than not" or "but for" standard of causation did not require Appellant to prove Appellees' negligence or defective product doubled the risk of injury, i.e., that it was more than fifty percent of the cause of her injury, or that it was the only cause of her cancer. Thus, Florida Standard Jury Instruction 401.12(a) provides:[2]

> Negligence is a legal cause of [loss] [injury] [or] [damage] if it directly and in natural and continuous sequence **produces or contributes substantially to producing** such [loss] [injury] [or] [damage], **so that it can reasonably be said that, but for the negligence**, the [loss] [injury] [or] [damage] would not have occurred.

(Emphasis added.) The second "Notes for Use" for this instruction explains that a "jury will properly consider instruction 401.12(a) not only in determining whether defendant's negligence is actionable but also in determining whether claimant's negligence contributed as a legal cause to claimant's damage, thus reducing recovery."

In addition, Florida Standard Jury Instruction 401.12(b) provides:

> In order to be regarded as a legal cause of [loss] [injury] [or] [damage] **negligence need not be the only cause**. Negligence may be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with . . . [**some other cause**] if the negligence **contributes substantially to producing** such [loss] [injury] [or]

---

[2] Appellees themselves proposed using this instruction.

8

[damage].

(Emphasis added.) And as the court explained in <u>Hoffman v. Jones</u>, the very purpose of a comparative fault determination is "[t]o allow a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury . . . ." 280 So. 2d 431, 439 (Fla. 1973), (emphasis added).

In the context of a tobacco case such as this, the plaintiff must typically prove an addiction to cigarettes containing nicotine and that this addiction was a legal cause of the illness at issue. "'Addiction is a legal cause of death if it directly and in a natural and continuous sequence produces or **contributes substantially** to producing such death . . . so that it can reasonably be said that, **but for** the addiction to cigarettes containing nicotine, the death would not have occurred.'"). <u>Martin</u>, 53 So. 3d at 1065 (quoting with approval the trial court's jury instruction) (emphasis added). <u>Accord</u> <u>Philip Morris USA, Inc. v. Allen</u>, 116 So. 3d 467, 472 (Fla. 1st DCA 2013). "Whether the addicted individual kept smoking after learning of cigarettes' deleterious health effects is a question of comparative fault, and thus, of liability to be determined at trial." <u>Lorillard Tobacco Co. v. Mrozek</u>, 106 So. 3d 479, 481 (Fla. 1st DCA 2012). <u>See</u> <u>e.g.</u>, <u>Brown</u>, 70 So. 3d 707 (finding plaintiff fifty percent liable); <u>Philip Morris USA, Inc. v. Hess</u>, 95 So. 3d 254 (Fla. 4th DCA 2012) (finding plaintiff fifty-eight percent at fault).

9

In Cox v. St. Josephs Hospital, the court explained the proper application of Gooding is as follows: "while a directed verdict is appropriate in cases where the plaintiff has *failed* to provide evidence that the negligent act more likely than not caused the injury, . . . [i]f the plaintiff has presented evidence that **could support** a finding that the defendant more likely than not caused the injury, a directed verdict is improper." 71 So. 3d 795, 801 (Fla. 2011) (italicized emphasis supplied; bolded emphasis added). Thus, the phrase "but for" is meant to convey the principle that a defendant's actions must, "more likely than not," have been "a substantial factor" in producing the injury. However, if the evidence supports only speculation that a defendant's conduct contributed substantially to causing the injury, the defendant cannot be held liable. Gooding, 445 So. 2d at 1018.

Here, Appellant "presented evidence that could support a finding that [Appellees] more likely than not caused" her lung cancer, making a directed verdict improper. Cox, 71 So. 3d at 801 (emphasis added). And to the extent that Dr. Burns' cross-examination testimony quoted above may, as the trial court found, have operated to "disavow" his testimony on direct, it was not a proper ground for a directed verdict, because it would go to the weight of the evidence, which is for the jury to consider. See, e.g., Hildwin v. State, 141 So. 3d 1178, 1187 (Fla. 2014) (holding: "Questions surrounding the materiality of the evidence and the weight to be given such evidence are for the jury."). Thus, we reverse the

10

ruling granting Appellees' directed verdict on the negligence and strict liability claims. We affirm on all other issues.

AFFIRMED in part, REVERSED in part, and REMANDED.

BENTON and ROBERTS, JJ., CONCUR.