CIKLIN, C.J.
David Cohen (“the plaintiff’) appeals the final judgment entered in favor of one of the defendants, Philip Morris USA, Inc. (“Philip Morris”), and the order granting the remaining defendants a new trial. He argues that the trial court erred in finding that he did not put forward sufficient evidence of causation as to Philip Morris, and that the trial court erred in finding a new trial was warranted based on closing argument of plaintiffs counsel. Philip Morris, R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, Liggett Group, LLC, and Vector Group, Ltd., Inc. (“the defendants”) cross-appeal the denial of their motion for judgment as a matter of’ law based on the statute of limitations, and *945 argue that application of the Engle[1] Phase I findings violates federal due process. We affirm on all issues except one — namely, the trial court’s grant of a directed verdict in favor of Philip Morris based on the lack of evidence pertaining to causation.
Factual Background
The plaintiff brought this Engle progeny action on behalf of the estate of his wife, Helen Cohen (“Helen”), pleading counts for negligence, strict liability, fraud by concealment, and conspiracy to commit fraud by concealment, among other causes of action not relevant on appeal.
Prior to trial, the defendants (excepting Liggett Group, LLC), moved “to preclude argument or comment disparaging them for defending themselves in litigation, or referring to defendants’ supposed failure to ‘take responsibility’ or ‘apologize’ to plaintiff.” The trial court denied the motion without prejudice to renew through proper trial objections. The defendants also moved in limine to prohibit arguments that the jury may disregard any references to the statute of limitations. The trial court granted the motion.
At the close of the plaintiffs ease at trial, Philip Morris moved for a directed verdict, arguing that the plaintiff failed to introduce evidence that would establish that Helen’s use of Philip Morris cigarettes was a legal cause of her chronic obstructive pulmonary disease (“COPD”) and lung cancer. Philip Morris acknowledged that there was evidence Helen smoked its cigarettes for “three years and a couple of months, or some undefined ‘significant’ amount of time,” and for 6.3B pack years[2] in the early 1950s, but it argued that this was not sufficient evidence of the actual amount of time she smoked its cigarettes. Philip Morris also argued that the expert testimony did not establish that its cigarettes were a “but for” or “substantial” cause of disease and death, as “Dr. Wright did not testify that if Mrs. Cohen had not smoked PM USA’s cigarettes, her ‘injury would not have occurred.’ ” The trial court granted the motion.
At trial, during the charge conference, defense counsel requested that “any reference [to] COPD” should be “COPD/emphy-sema,” and plaintiffs counsel, did not object. Interrogatory #2 pertained to the defendants’ statute of limitations defense, in which they asserted that Helen was aware or should have been aware of her disease, and its connection to her smoking of cigarettes, on or before May 5, 1990. Interrogatory #2 on the verdict form reads as follows:
Did Mrs. Cohen know, or should she have known in the exercise of reasonable care, on or before May 5, 1990, that she had COPD/Emphysema and that there was a reasonable possibility that the COPD/Emphysema was caused by cigarette smoking?
During closing argument, plaintiffs counsel made the following statements regarding the defendants’ failure to take responsibility:
It is the use of the disclosures in these documents and the attention we paid to them that show the root cause of this *946 crisis, the tobacco epidemic in this country. And that’s the first step towards accountability. I challenge the defense attorneys in any way, shape, or form during—
[[Image here]]
We will see if for any reason under any set of circumstances any acknowledgement of responsibility—
[[Image here]]
There’s a dozen things tobacco has never admitted to this day in this courtroom.
[[Image here]]
The evidence in this case from Dr. Proctor is that big tobacco has never admitted that cigarettes are the leading cause of death in the U.S. and worldwide.
[[Image here]]
Big Tobacco has never admitted it.
[[Image here]]
.1 had read to you that the tobacco industry has never admitted that they manipulate the chemistry of the tobacco to create sustained addiction. They’ve never admitted that Alters are fraudulent. They’ve never admitted that low-tar cigarettes are no less deadly than regular cigarettes. They’ve never admitted that the cigarettes smoked today are just as deadly as any cigarettes ever smoked. They never admitted that hundreds of thousands of people have died.... And they’ve never offered any apology for any of the above.
Additionally, while discussing the statute of limitations defense, plaintiffs counsel informed the jury that “COPD, by the way, is not the same kind of thing as emphysema in terms of the word and the use of the word and the understanding of the word.” Counsel also characterized the defense as a “technicality.”
During its deliberations, the jury posed the following question: “To clarify question #2: If we determine Mrs. Cohen knew she had ‘emphysema’ before May 5, 1990, but was not informed of a ‘COPD’ diagnosis, does that alone qualify for a ‘yes’ response?” The trial court read back the portion of the jury instructions instructing the jury that on the defendants’ statute of limitations defense, the defendants had to prove that Helen “knew or ... should have known before May 5,1990 that she had COPD backslash emphyse-mai”
The jury returned a verdict in favor of the defendants on the fraud and conspiracy counts but otherwise in favor of .the plaintiff in the amount of $2,055,050.26. The remaining defendants moved for new trial based on, among myriad grounds, comments made by plaintiffs counsel during closing argument. The trial court granted the motion for new trial, finding that counsel’s statements regarding COPD and emphysema misled the jury to believe there was “some difference between COPD and emphysema for purposes of the statute of limitations when even Plaintiff had agreed and the Court had instructed that there was no difference between the two.” With respect to the “take responsibility” and “apologize” arguments, the court found they were improper, and that they '“permeated” the closing argument, warranting a new trial.
Analysis

A. Improper Closing Argument

The plaintiff contends that the arguments made during closing were proper in that they related to the evidence and claims, particularly to his request for punitive damages. He also argues that the statements distinguishing emphysema from COPD were accurate statements and that any confusion was caused because both terms were used interchangeably by defense counsel and the trial court.
*947 The standard of review of an order granting new trial is abuse of discretion. Fla. Power & Light Co. v. Hayes, 122 So.3d 408, 412 (Fla. 4th DCA 2013) (citation omitted). “ ‘Moreover, a stronger showing has usually been required to reverse an order allowing a new trial than to reverse an order denying a motion for new trial.’” Id. (quoting Thigpen v. United Parcel Servs., Inc., 990 So.2d 639, 645 (Fla. 4th DCA 2008)). “It is well settled that an order granting a new trial will not be disturbed by this court except upon a clear showing of an abuse of the trial judge’s judicial discretion.” Wiggs v. Loftin, 61 So.2d 490, 490 (Fla.1952) (citations omitted). To the extent the trial court’s order was based on conclusions of law, the standard of review is de novo. Bluth v. Blake, 128 So.3d 242, 245 (Fla. 4th DCA 2013).
A “trial court should grant a new trial [based on improper- argument] if the argument was so highly prejudicial and inflammatory that it denied the opposing party its right to a fair trial.” Philip Morris USA, Inc. v. Tullo, 121 So.3d 595, 600 (Fla. 4th DCA 2013). “Where multiple errors are found, even if deemed harmless individually, ‘the cumulative effect of such errors,’ may ‘deny to defendant the fair and impartial trial that is the inalienable right of all litigants.’ ” Hurst v. State, 18 So.3d 975, 1015 (Fla.2009) (quoting Brooks v. State, 918 So.2d 181, 202 (Fla.2005)).
This court has recognized that “[i]t is improper for counsel to suggest in closing argument that a ‘defendant should be punished for contesting damages at trial’ or that defending a ‘claim in court’ is improper.” Allstate Ins. Co. v. Marotta, 125 So.3d 956, 960 (Fla. 4th DCA 2013) (quoting Intramed, Inc. v. Guider, 93 So.3d 503, 507 (Fla. 4th DCA 2012)). In Tullo, plaintiffs counsel made similar- “take responsibility” arguments as were made here. For example: “When the defense gets up and gives their closing, I can -assure you that they’re not going to take any responsibility whatsoever, even though their companies told the American public back in 1954 they would.” 121 So.3d at 598, ■ Because the error was not preserved and was found not to constitute fundamental error, this court affirmed. Id. at 601. However, we acknowledged the comments were improper: “[I]t is improper for a plaintiffs counsel to disparage the defendant for defending itself and for failing to take responsibility for its actions.” Id. We also warned counsel “to be vigilant in crafting closing arguments that fall within the confines of permissibility.” Id. at 602.
In Marotta, plaintiffs counsel argued that - the defendant denied responsibility and-should be made to take responsibility. Marotta, 125 So.3d at 958-59. Counsel further argued:
Now, what is repentance? ... It’s' not enough to say, ... five years almost after this accident, yeah, the uninsured motorist in this case was negligent and caused harm and losses.... The second step is to accept full responsibility, full responsibility. Not part of the responsibility, to accept full responsibility.
[[Image here]]
[Consistently, in this case, didn’t want to accept the responsibility at all for causing the accident ... and they still don’t want to accept the responsibility.... Allstate could have come to this trial saying, I’m sorry, I want to fairly pay you for the injuries ... but they didn’t.
Id. at 959. The court reversed for new trial based on cumulative error, including the improper argument. Id. at 961. The court- reasoned that the comments were “numerous, even when viewed in context, and made the argument such that it was not designed to prompt a logical analysis of the evidence in light of the applicable *948 law.” Id. at 960 (citation- and internal quotation marks omitted).
More recently, in his dissenting opinion in R.J. Reynolds Tobacco Co. v. Calloway, 41 Fla. L. Weekly D108, 2016 WL 64296 (Fla. 4th DCA Jan. 6, 2016), Judge Klin-gensmith reaffirmed the clarion call this court sent in Tullo:
In Tullo, we sent a gentle message to lawyers pertaining to how future cases should be handled, and cautioned counsel to “be vigilant in crafting closing arguments that fall within the confines of permissibility.” 121 So.3d at 602. Unfortunately, we have seen many recent cases where this warning was either misunderstood or simply ignored. In this dissenting opinion, I hope to make that warning clearer. Attorneys who engage in such tactics in the future do so at their own peril, and the peril of their clients, by risking the reversal of their cases on appeal.
Id. at D113. (Klingensmith, J., dissenting).
We find that counsel made arguments which crossed the line into “take responsibility’ and “apologize” territory. On this record, we are not able to find that the trial court abused its discretion by granting a new trial based in part on these comments. The plaintiff argues that the statements here were permissible because he was seeking punitive damages. We disagree. To obtain punitive damages, a plaintiff must establish “by clear and convincing evidence the defendant is guilty of intentional misconduct or gross negligence.” R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1070 (Fla. 1st DCA 2010). In Engle progeny cases, the plaintiff can do this by showing, for example, that a cigarette manufacturer was aware of but publicly denied the addictive and harmful nature of cigarettes. See id. The disputed arguments in this case were not clearly linked to proving intentional misconduct or gross negligence. Rather than focusing on the timing of the manufacturers’ denials and what the evidence reflected they knew when they made the denials, counsel made broader accusations — that the tobacco companies never admitted guilt and never apologized, and failed to do either during the course of trial. These arguments are no different than those found to be improper in Marot-ta and Tullo and are every bit as egregious and unacceptable.
We also find the trial court did not abuse its discretion in granting a new trial based in part on counsel’s comments related to the statute of limitations defense. Arguments are improper where they are not confined to the facts and evidence presented to the jury and misstate the evidence in an attempt to mislead the jury. Vargas, 176 So.3d at 326-27. Here, counsel’s argument regarding COPD and emphysema was misleading. In order to prevail on their statute of limitations defense, the defendants had to prove that Helen was aware, prior to May 6, 1990, that she had “COPD/emphysema” and that it was related to smoking. Counsel’s claim in closing argument that COPD is distinct from emphysema constituted an attempt to elevate the defendants’ burden on their defense, so that they would have to prove Helen’s knowledge as to COPD and emphysema rather than “COPD/emphysema” as it was phrased on the verdict form, without objection by plaintiffs counsel. The strategy worked, as evidenced by the jury’s question regarding interrogatory # 2. Even if the jury’s confusion stemmed in part from the use of both terms throughout trial, this does not undo the fact that plaintiffs counsel impermissibly exploited any existing confusion.
The trial court’s grant of new trial was based on other grounds. We find that the two grounds discussed herein formed a *949 sufficient basis for a new trial. For that reason, we do not address the other grounds relied on by the trial court and disputed by the plaintiff on appeal.

B. Directed Verdict on Issue of Causation

The plaintiff also challenges the trial court’s grant of a directed verdict for Philip Morris on the element of causation. “The standard for reviewing a trial court’s ruling on a motion for directed verdict is de novo.” Meruelo v. Mark Andrew of the Palm Beaches, Ltd., 12 So.3d 247, 250 (Fla. 4th DCA 2009) (citation omitted). “A directed verdict ‘is not appropriate in cases where there is conflicting evidence as to the causation or the likelihood of causation.’ ” Friedrich v. Fetterman & Assocs., P.A., 137 So.3d 362, 365 (Fla.2013) (quoting Cox v. St. Josephs Hosp., 71 So.3d 795, 801 (Fla.2011)).
“[T]o prevail on either strict liability or negligence Engle claims, individual plaintiffs must establish (i) membership in the Engle class; (ii) individual causation, i.e., that addiction to smoking the Engle defendants’ cigarettes containing nicotine was a legal cause of the injuries alleged; and (iii) damages.” Philip Morris USA, Inc. v. Douglas, 110 So.3d 419, 430 (Fla.2013). Engle defendants may defend against individual causation by proving, for example, “that the disease at issue was the result of a genetic predisposition, exposure to an occupational hazard, or something unrelated to the plaintiffs addiction to smoking the Engle defendants’ cigarettes.” Id. at 428.
The Florida Supreme Court has explained how causation is established in a negligence case:
In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiffs injury. Prosser explored this standard of proof as follows:
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and’When the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Gooding v. Univ. Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.1984) (internal citations omitted) (quoting Prosser, Law of Torts- § 41 (4th ed.1971)). Relying on Gooding, the First District elaborated on proving individual causation in tobacco cases:
[A] defendant’s' conduct need not be the only cause of a plaintiffs injuries, or even fifty-one percent of the cause; rather, the plaintiff must present evidence that the defendant’s conduct was, more likely than not, a “substantial factor” in causing the injury. Thus, the plaintiff is not required to prove that the defendant’s conduct alone was more likely than not the sole proximate cause.
[[Image here]]
In the context of a tobacco case such as this, the plaintiff must typically prove an addiction to cigarettes containing nicotine and that this addiction was a legal cause of the illness at issue. - (“ ‘Addiction is a legal cause of death if it directly and in a natural and continuous sequence produces or contributes substantially to producing such death ... so *950 that it can reasonably be said that, but for the addiction to cigarettes containing nicotine, the death would not have occurred.’”) [R.J. Reynolds Tobacco Co. v.] Martin, 53 So.3d [1060,] 1065 [ (Fla. 1st DCA 2010)]....
In Cox v. Josephs Hospital, the' court explained the proper application of Gooding is as--follows:- “while a directed verdict is appropriate in cases where the plaintiff has failed to provide evidence that the negligent act more likely than not caused the injury, ... [i]f the plaintiff has presented evidence that could support a finding that the defendant more likely than not caused the injury, a directed verdict is improper.” 71 So.3d 795, 801 (Fla.2011)_Thus, the phrase “but for” is meant to convey the principle that a defendant’s actions must, “more likely than not,” have been “a substantial factor” in producing the injury. However, if the evidence supports only speculation that.a defendant’s conduct contributed substantially to causing the injury, the defendant cannot be held liable. Gooding, 445 So.2d at 1018.
Whitney v. R.J.. Reynolds Tobacco Co,, 157 So.3d 309, 312-14 (Fla. 1st . DCA 2014) (emphases omitted).
The defendants rely on Reaves v. Armstrong World Indus., Inc., 569 So.2d 1307 (Fla. 4th DCA 1990), in support of their argument that a directed verdict was proper because no expert testified that “if [Helen] had not smoked [Philip Morris] cigarettes, her injuries would not have occurred — nor did they testify that smoking those [Philip Morris] cigarettes alone would have been sufficient to cause her injuries.”. This type of reasoning was. rejected in Whitney, and we agree with the First District:
Here, in directing a verdict in Appellees’ favor on the issue of causation, the learned trial court erred in its interpretation of Dr. Burns’ testimony and the standard for establishing causation. Dr. Burns was essentially asked whether he could say that Appellant would not have developed lung cancer at all, if she had only smoked regular cigarettes rather than the cigarettes with the alleged design defects, Dr. Burns replied that he could not say that, “because it’s not clear that there is a doubling of the risk produced by these design changes, which is what would be required to make a statement of more than 50’ percent ... more likely than not.” But this was neither the ultimate issue nor the correct legal standard for causation.
Appellant did not claim that she never would have developed lung cancer if she had smoked non-filtered, full-flavored cigarettes instead of Appellees’ engineered cigarettes. Such a claim would have been unsupportable on the evidence, and Appellees themselves conceded that all cigarettes can cause lung cancer. Rather, Appellant’s claim asserted that Appellees’ cigarettes with the defective designs increased her risk of becoming and remaining addicted to smoking and of developing lung cancer. ...
The “more likely than not” or “but for” standard of causation did not require Appellant to prove Appellees’ negligence or defective product doubled the risk of injury, i.e., that it was more than fifty percent of the cause' of her injury, or that it was the only cause of her cancer. Thus, Florida Standard Jury Instruction 401.12(a) provides:
Negligence is a legal cause of [loss] [injury] [or] [damage] if it directly and in natural and continuous sequence produces or contributes substantially to producing such [loss] [injury] [or] [damage], so that it can reasonably be said that, but for the negligence, the *951 [loss] [injury] [or] [damage] would not have occurred.
The second “Notes for Use” for this instruction explains that a “jury will properly consider instruction 401.12(a) not only in determining whether defendant’s negligence is actionable but also in determining whether claimant’s negligence contributed as a legal cause to claimant’s damage, thus reducing recovery.”
In addition, Florida Standard Jury Instruction 401.12(b) provides:
In order to be regarded as a legal cause of [loss] [injury] [or] [damage] negligence need not be the only cause. Negligence may be a legal cause of [loss] [injury] [or] [damage] even though it operates in combination with ... [some other cause] if the negligence contributes substantially to producing such [loss] [injury] [or] [damage].
... [T]he very purpose of a comparative fault determination is “[t]o allow a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury....”
157 So.3d at 312-13 (emphases, and footnote omitted) (quoting Hoffman v. Jones, 280 So.2d 431, 439 (Fla.1973)).
As such, Philip Morris was not entitled to a directed verdict on the element of causation simply because the plaintiffs experts were unable to say that Helen would not have developed her fatal diseases if she had not smoked Philip Morris cigarettes or that Helen would have developed her fatal diseases if she had smoked only Philip Moitís cigarettes.
We find the remaining arguments on appeal and cross-appeal lacking in merit and thus we decline to discuss them. Based on the foregoing, we affirm the grant of new trialy affirm the denial of the defendants’ motion for judgment as a matter of law based on the statute of limitations, reverse the directed verdict in Philip Morris’ favor, and remand for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings.

GERBER and CONNER, JJ., concur.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. A pack year is a “way to measure the amount a person has smoked over a long period of time,” and is "calculated by multiplying the number of packs of cigarettes smoked per day by the number of years the person has smoked.” NCI Dictionary of Cancer Terms, National Cancer Institute, http:// www.cancer.gov/publications/dictionaries/ cancer-terms?CdrID=306510 (last visited June 20, 2016).