DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP MORRIS USA INC., R.J. REYNOLDS TOBACCO COMPANY,**
and **LIGGETT GROUP LLC,**
Appellants,

v.

**JAMES SANTORO,** as successor as Personal Representative of the
**ESTATE OF GRACE SANTORO,**
Appellee.

No. 4D18-1730

[May 6, 2020]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case Nos. 08-80000 (19), 2008-CV-025807 (19).

David F. Northrip, Maria Salcedo, and Laura K. Whitmore of Shook, Hardy & Bacon L.L.P., Kansas City, MO, and Geoffrey J. Michael of Arnold & Porter Kaye Scholer LLP, Washington, DC, for appellant Philip Morris USA Inc.

William L. Durham II and Val Leppert of King & Spalding LLP, Atlanta, GA, for appellant R.J. Reynolds Tobacco Company.

Kelly Anne Luther of Kasowitz Benson Torres LLP, Miami, for appellant Liggett Group LLC.

Justin Parafinczuk and Austin Carr of Koch Parafinczuk Wolf Susen, Fort Lauderdale, and Bard D. Rockenbach and Jeffrey V. Mansell of Burlington & Rockenbach, P.A., West Palm Beach, for appellee.

WARNER, J.

Philip Morris USA Inc., R.J. Reynolds Tobacco Company, and Liggett Group LLC (Tobacco Defendants) appeal a final judgment for damages entered in favor of James Santoro, as Successor Personal Representative of the Estate of Mrs. Grace Santoro (the Estate). Tobacco Defendants contend that the court erred in denying their motion for directed verdict

on the ground that the decedent was a member of the *Engle* class,[1] thus precluding this cause of action. The Estate cross-appeals the final judgment, contending that the court erred in setting aside the jury verdict on its strict liability and negligence claims, as well as the award of punitive damages, based upon the Estate's failure to prove causation as to each individual defendant. We affirm the denial of the directed verdict as to class membership, but we reverse the order granting defendants' motion for directed verdict, concluding that sufficient evidence was presented for the jury to find as it did on both issues.[2]

The Estate filed this *Engle* progeny suit in 2007 against the Tobacco Defendants for Grace Santoro's wrongful death in 1998 from lung cancer. Grace had been a lifetime smoker. The Estate alleged claims for strict liability, negligence, fraudulent concealment, and conspiracy to commit fraud by concealment. Tobacco Defendants contested Grace's membership in the *Engle* class, as well as their individual causation of her death.

At trial, to prove *Engle* class membership, the Estate presented testimony from an expert pulmonologist and Mr. Santoro, Grace's husband. The expert pulmonologist, Dr. Allan Feingold, testified that Mrs. Santoro was first diagnosed with cancer on July 7, 1997. A CT scan on that date revealed a 7.1 centimeter mass in the upper right lobe of Mrs. Santoro's lung. A biopsy showed the tumor was advanced, stage III, non-small cell lung cancer. Dr. Feingold testified that because he knew the cancer cell type and the rate at which that cell type grows, he could determine how long Mrs. Santoro's tumor had been growing in her chest. Using his expertise, he calculated that by the end of September 1996, the diameter of the tumor would have been at least 4.41 centimeters. In May 1996, it would have been 3.5 centimeters, the size of a walnut, and would have been easily detectible on an X-ray, had one been taken.

Dr. Feingold testified that such a tumor could cause hemoptysis, coughing up of blood from the lung. Mrs. Santoro's husband testified that she had coughed up blood on a trip they took to Las Vegas in the summer

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

[2] In one issue on appeal, Tobacco Defendants argue that the Estate's claims are preempted or that use of the *Engle* findings violates their due process rights. They acknowledge, however, that their claims have already been rejected by the Florida Supreme Court. *See R.J. Reynolds Tobacco Co. v. Marotta*, 214 So. 3d 590, 605 (Fla. 2017); *Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 430-36 (Fla. 2013). We do not address this further, because these issues have already been settled.

of 1996. While the Tobacco Defendants attempted to impeach Mr. Santoro with his deposition testimony, he tied the trip to his purchase of a car for them with the couple's winnings from that trip, and records showed that he had indeed purchased a vehicle that summer. Mrs. Santoro's medical records indicated that she reported incidents of hemoptysis in the spring and summer of 1997, after which she was diagnosed with lung cancer.

At the close of the Estate's case, Tobacco Defendants moved for a directed verdict on *Engle* class membership, arguing that the Estate had failed to prove that Mrs. Santoro's lung cancer had manifested itself prior to the *Engle* class cutoff date of November 21, 1996. The court deferred ruling but ultimately denied the motion. Tobacco Defendants also moved for a directed verdict claiming that the Estate had failed to prove the use of each individual Tobacco Defendant's product was a legal cause of the lung cancer and death of Mrs. Santoro, the facts of which we will address later in this opinion. The trial court reserved ruling and expressed concern that there was no testimony as to each individual defendant's liability.

The case proceeded to the jury, and the jury found that Mrs. Santoro's lung cancer manifested itself before the *Engle* class cutoff date, and thus she was a member of the *Engle* class. The jury determined that Mrs. Santoro's smoking of each Tobacco Defendant's cigarettes was a legal cause of her lung cancer and death. The jury found for the Estate on its strict liability, negligence, fraud, and conspiracy counts and apportioned liability as follows:

> Grace Santoro: 36%
> Philip Morris USA, Inc.: 28%
> R.J. Reynolds Tobacco Company: 26%
> Liggett Group LLC: 10%

It awarded compensatory damages in the amount of $1,605,000, and also found that the Tobacco Defendants should be liable for punitive damages. The jury returned a Phase II verdict awarding the Estate $100,000 in punitive damages against Philip Morris, $90,000 from R.J. Reynolds, and $15,000 from Liggett. The trial court initially entered judgment in the Estate's favor for both compensatory and punitive damages.

Tobacco Defendants moved to set aside the verdict in accordance with their motion for directed verdict which claimed a lack of proof of causation from each defendant's brands of cigarettes, as well as failure to prove *Engle* class membership. The court granted the motion as to the strict liability, negligence, and fraud claims but denied it as to the conspiracy count, based upon *Rey v. Philip Morris, Inc.*, 75 So. 3d 378 (Fla. 3d DCA 2011),

3

which concluded that brand usage was irrelevant in a conspiracy claim. The trial court also denied Tobacco Defendants' motion to set aside the Phase I and Phase II verdicts as to class membership.

The trial court originally reduced the verdict to account for Mrs. Santoro's comparative negligence. The Estate moved to amend the final judgment pursuant to *Schoeff v. R.J. Reynolds Tobacco Co.*, 232 So. 3d 294 (Fla. 2017) to award the full amount of compensatory and punitive damages. The trial court granted the motion as to compensatory damages, but denied it with respect to punitive damages, since the Estate sought punitive damages only on the negligence and strict liability claims upon which the court had granted the directed verdict. The court then amended the final judgment to award the full amount of compensatory damages. From this judgment both sides appeal.

## Denial of Directed Verdict on *Engle* Class Membership

Tobacco Defendants first contend that the court erred in denying their motion for directed verdict on Mrs. Santoro's *Engle* class membership. They argue that the expert's testimony of the retrograde analysis of the size of the tumor at the time of the *Engle* class membership cutoff date does not constitute the "manifestation" of her disease within the meaning of the case law. The Estate counters that the retrograde analysis of the tumor size in the spring of 1996, which could cause symptoms, together with the testimony of Mr. Santoro that his wife experienced hemoptysis prior to the cutoff date, was sufficient to prove class membership. We agree with the Estate.

Review of a trial court's denial of a motion for directed verdict is de novo, "while considering 'the evidence and all inferences of fact in the light most favorable to the nonmoving party.'" *Broward Exec. Builders, Inc. v. Zota*, 192 So. 3d 534, 536 (Fla. 4th DCA 2016) (citation omitted). "A directed verdict 'is not appropriate in cases where there is conflicting evidence as to the causation or the likelihood of causation.'" *Friedrich v. Fetterman & Assocs., P.A.*, 137 So. 3d 362, 365 (Fla. 2013) (quoting *Cox v. St. Josephs Hosp.*, 71 So. 3d 795, 801 (Fla. 2011)). "A directed verdict can be upheld only if there is **no evidence or inference from the evidence** which will support the non-moving party's position. Moreover, a directed verdict in a negligence action should only be entered if the plaintiff **could not recover under any reasonable view of the evidence.**" *Whitney v. R.J. Reynolds Tobacco Co.*, 157 So. 3d 309, 312 (Fla. 1st DCA 2014) (citation omitted) (emphasis included).

To rely on the findings of *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1274 (Fla. 2006), which established general causation that cigarette smoking causes cancer, the Estate was required to prove that Grace Santoro was a class member under *Engle*, whose members are described as those "who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." *See R.J. Reynolds Tobacco Co. v. Ciccone*, 190 So 3d 1028, 1030 (Fla. 2016) (quoting *R.J. Reynolds Tobacco Co. v. Engle*, 672 So. 2d 39, 40 (Fla. 3d DCA 1996)). The court established a cutoff date for *Engle* class membership of November 21, 1996. "The critical event is not when an illness was actually *diagnosed* by a physician, but when the disease or condition first manifested itself." *Engle*, 945 So. 2d at 1276. Thus, the disease must manifest itself in the person before the cutoff date.

In *Ciccone*, the supreme court addressed the certified question of "defining 'manifestation' of the plaintiff's tobacco-related disease or medical condition for purposes of establishing membership in the *Engle* class." 190 So. 3d at 1035. The *Ciccone* court held that "'manifestation' for purposes of establishing membership in the *Engle* class is defined as the point at which the plaintiff began suffering from or experiencing symptoms of a tobacco-related disease or medical condition." *Id.* at 1041.

We conclude that the evidence was sufficient to submit to a jury for determination of whether Mrs. Santoro suffered symptoms from lung cancer prior to the cutoff date of *Engle* class membership. *See, e.g., Castillo v. E.I. Dupont De Nemours & Co., Inc.,* 854 So. 2d 1264, 1279 (Fla. 2003). Her husband testified that she had an incident of coughing up blood, or hemoptysis, in the summer of 1996. The expert testified that her lung cancer tumor was of sufficient size then to cause hemoptysis, which is a symptom of lung cancer. He also opined that her lung cancer was caused by smoking. "The question of class membership is a fact issue viewed with the benefit of hindsight . . . where expert testimony may establish the link between a plaintiff's concrete symptoms and tobacco." *Ciccone,* 190 So. 3d at 1039. Dr. Feingold's testimony provided a link between the husband's testimony of the 1996 incident of hemoptysis, that it was a symptom of cancer, and her death from lung cancer caused by her cigarette smoking.

Although Tobacco Defendants point to their impeachment of the husband's testimony regarding the date he observed the hemoptysis, the jury was free to weigh the credibility of a witness and accept or reject testimony. *See Wald v. Grainger,* 64 So. 3d 1201, 1205 (Fla. 2011). The weight to be given evidence is for the jury to decide. *Whitney v. R.J. Reynolds Tobacco Co.,* 157 So. 3d 309, 314 (Fla. 1st DCA 2014). A

reviewing court may not reweigh the evidence or substitute its judgment concerning the credibility of a witness for that is the province of the jury. *Friedrich v. Fetterman & Assocs., P.A.*, 137 So. 3d 362, 365 (Fla. 2013). We therefore find no error in denying Tobacco Defendants' motion for directed verdict on *Engle* class membership.

## Setting Aside Jury Verdict Based upon Failure to Prove Legal Cause as to Individual Defendants

At issue on the cross-appeal is the trial court's decision to set aside the jury's verdict in favor of the Estate on its claims for negligence and strict liability in accordance with Tobacco's motion for directed verdict. The court reasoned that without expert testimony to support individual legal causation, the verdict could not stand.

The Estate agrees that the expert, Dr. Feingold, did not give specific opinion testimony on causation as to each Tobacco Defendant. It argues, however, that Dr. Feingold's testimony, together with Mr. Santoro's testimony, regarding the brands that Mrs. Santoro smoked and the periods of time that she smoked each Defendant's cigarettes, was sufficient proof of causation for their negligence and strict liability claims. We agree.

In *Engle,* the supreme court established certain findings which had a *res judicata* effect on all *Engle* progeny cases. Those included:

> i) "that smoking cigarettes causes" certain named diseases including COPD and lung cancer; (ii) "that nicotine in cigarettes is addictive;" (iii) "that the [*Engle*] defendants placed cigarettes on the market that were defective and unreasonably dangerous;" (iv) "that the [*Engle*] defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both;" (v) "that the [*Engle*] defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment;" (vi) "that all of the [*Engle*] defendants sold or supplied cigarettes that were defective;" (vii) "that all of the [*Engle*] defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said defendants;" and (viii) "that all of the [*Engle*] defendants were negligent."

6

. . .

> . . . Because these findings go to the defendants' underlying conduct, which is common to all class members and will not change from case to case, we held that these approved "Phase I common core findings . . . will have *res judicata* effect" in class members' "individual damages actions."

*Philip Morris USA, Inc. v. Douglas,* 110 So. 3d 419, 424-28 (Fla. 2013) (footnote omitted) (quoting *Engle,* 945 So. 2d at 1276-77, 1269). These findings establish general causation, and individual causation must be established in subsequent lawsuits. The *Douglas* court explained:

> In other words, the Phase I common liability jury determined general causation (the connection between the *Engle* defendants' addictive cigarettes and the diseases in question), which leaves specific or individual causation (the connection between the *Engle* defendants' addictive cigarettes and the injury that an individual plaintiff actually sustained) to be determined on an individual basis. The *Engle* defendants may defend against the establishment of individual causation, for example, by proving that the disease at issue was the result of a genetic predisposition, exposure to an occupational hazard, or something unrelated to the plaintiff's addiction to smoking the *Engle* defendants' cigarette.

*Id.* at 428. In *Douglas,* the defendants claimed that the *Engle* findings were not sufficiently specific "to establish a causal link between their conduct and damages to individual plaintiffs who prove injuries caused by addiction to smoking the *Engle* defendants' cigarettes." *Id.* The court rejected this proposition and concluded that the *Engle* findings were sufficient to prove individual causation. "When an *Engle* class member makes this showing [of legal causation due to addiction to cigarettes], injury as a result of the *Engle* defendants' conduct is assumed based on the Phase I common liability findings." *Id.* at 429.

> In other words, to prevail on either strict liability or negligence *Engle* claims, individual plaintiffs must establish (i) membership in the *Engle* class; (ii) individual causation, i.e., *that addiction to smoking the Engle defendants' cigarettes containing nicotine was a legal cause of the injuries alleged*; and (iii) damages. *See Engle,* 945 So. 2d at 1254 (recognizing that *Engle* plaintiffs are required to prove "individual causation" in their damages actions); *see also Martin,* 53 So.

7

3d at 1069 (holding that the plaintiff proved legal causation for her negligence and strict liability claims by producing "sufficient evidence for a jury to find that [the deceased's] addiction to [the *Engle* defendant's] cigarettes[, stipulated to contain nicotine,] was the legal cause of his death").

*Id.* at 430 (emphasis added).

The *Douglas* court cited with approval to *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1069 (Fla. 1st DCA 2010), *review denied*, 67 So. 3d 1050 (Fla. 2011), *cert. denied*, 566 U.S. 905 (2012). *Martin* is instructive on the issue of the proof necessary for individual causation. There, the decedent smoked R.J. Reynolds cigarettes his entire life and died of lung cancer. His widow brought suit for wrongful death. At trial, the parties stipulated that the cigarettes the decedent smoked contained nicotine, nicotine is addictive, and smoking causes lung cancer. The jury found that the cigarettes were a legal cause of his death and awarded substantial damages. The main issue on appeal was whether the plaintiff could rely on the *Engle* findings to prove individual causation. The court held that she could and determined that there was sufficient evidence to submit to the jury on the issue:

> At trial Mrs. Martin produced evidence showing that: Mr. Martin started smoking at age 14 and by age 23 was smoking two packs of non-filtered Lucky Strike cigarettes every day; . . . Mr. Martin was diagnosed by a physician as being addicted to nicotine; his treating pulmonologist determined his decades of smoking caused him to contract lung cancer which in turn caused his death. The record thus demonstrates Mrs. Martin was required to prove legal causation, and she produced sufficient evidence for a jury to find that Mr. Martin's addiction to RJR's cigarettes was the legal cause of his death.

*Id.* at 1069. What we glean from *Douglas* and *Martin* is that individual causation can be proved by (1) the *Engle* findings that smoking cigarettes causes cancer and related diseases, and nicotine in cigarettes is addictive; (2) evidence that the decedent smoked the defendants' cigarettes in sufficient quantities to become addicted; (3) that decedent was addicted to smoking cigarettes; and (4) smoking cigarettes caused her lung cancer and death.

Tobacco Defendants argue that expert evidence was necessary to prove that each of their products was a substantial factor in causing Mrs.

Santoro's death from lung cancer, with which the trial court agreed. We conclude, however, that the Estate did prove this with a combination of expert testimony, lay testimony, and the *Engle* findings from which the jury could draw logical inferences.

Through lay testimony, the jury learned that Mrs. Santoro was smoking from the time she was seventeen years old. She smoked multiple brands manufactured by Tobacco Defendants. She first smoked Chesterfields (Liggett) for four or five years. She also smoked Lucky Strikes (RJR) for four or five years; Marlboro (PM), for six or seven years; Philip Morris (PM) for at least five years; and Camel (RJR), Virginia Slims (PM), Viceroy (RJR), and Kool (RJR) for unspecified amounts of time. Mrs. Santoro's medical records showed that she smoked "one and a quarter to two packs per day, which would be somewhat more than 20 cigarettes, maybe 25 cigarettes a day to 40 cigarettes a day." Dr. Feingold testified that consistent ingestion of five milligrams of nicotine, which would be delivered by five cigarettes, was a threshold for addiction. "Almost everybody that smokes four times that threshold amount would be addicted," and he opined that Mrs. Santoro was addicted based upon standard tests used to determine addiction. Mrs. Santoro's nicotine intake, assuming that she smoked forty-nine years, would be "self-administered doses of nicotine" of more than "5 million doses." If she smoked thirty-nine years, then it would be more than "4 million doses" of nicotine. "And either way, it is my opinion that the patient was addicted to nicotine while she smoked." Dr. Feingold also testified that she died of metastatic lung cancer, which was caused by smoking cigarettes.

Based on the foregoing proof, the jury could find that Mrs. Santoro smoked each Tobacco Defendant's cigarettes in quantities and for a length of time which would cause addiction to those cigarettes. Expert testimony proved she was addicted to smoking. The *Engle* findings required the jury to find that the nicotine in each of the Tobacco Defendants' cigarettes causes addiction, and smoking causes lung cancer. Expert testimony showed that her addiction led to her lung cancer which led to her death. In other words, the jury could determine that smoking each Tobacco Defendant's cigarettes "directly and in natural and continuous sequence," contributed substantially to producing her death. An expert was not required to opine expressly as to each Tobacco Defendant that their product was a substantial factor in causing the death of Mrs. Santoro. The evidence presented did not require the jury to make any inferences other than to tie the expert testimony to the lay testimony, as juries are frequently asked to do in trials. *See, e.g.*, *Castillo v. E.I. Dupont De Nemours & Co., Inc.*, 854 So. 2d 1264, 1279 (Fla. 2003). Thus, the court

9

erred in overturning the jury verdict as to the strict liability and negligence claims.

## Conclusion

The court did not err in denying the Tobacco Defendants' motion for directed verdict as to *Engle* class membership, but it did err in granting their motion for directed verdict as to the strict liability and negligence claims. We thus reverse and remand for reinstatement of the jury verdict on those claims, and for the entry of an amended final judgment which will include the jury's award of punitive damages which were based upon the strict liability and negligence claims.

*Affirmed in part; Reversed in part; and remanded for further proceedings.*

FORST, J., and WALSH, LISA A., Associate Judge, concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***