DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY,**
Appellant,

v.

**ROBERT HAMILTON,** as Personal Representative of the Estate of
**JANICE HAMILTON,**
Appellee.

No. 4D19-2699

[February 10, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. CACE 08-019632 (13).

William L. Durham II and Val Leppert of King & Spalding LLP, Atlanta, Georgia, for appellant.

John S. Mills, Courtney Brewer, and Jonathan A. Martin of Bishop & Mills, PLLC, Tallahassee, and Robert W. Kelley and Kimberly Wald of Kelley Uustal, PLC, Fort Lauderdale, for appellee.

DAMOORGIAN, J.

In this *Engle*[1] progeny case, R.J. Reynolds Tobacco Company ("RJR") appeals the final judgment entered in favor of Robert Hamilton ("Plaintiff"), as personal representative of the estate of his deceased mother, Janice Hamilton ("Mrs. Hamilton"). RJR argues the trial court erred by: (1) allowing RJR to be ambushed by the changed testimony of a witness and restricting its cross-examination of that witness; (2) admitting a hearsay statement under the state of mind exception to the hearsay rule; (3) denying RJR's motion for new trial due to improper comments made by Plaintiff's counsel during closing arguments; and (4) applying the *Engle* common core findings in violation of RJR's due process rights and the principles of conflict preemption. Finding merit in RJR's argument that the court reversibly erred in admitting a hearsay statement, we reverse.

---

[1]  *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

Plaintiff filed suit against RJR asserting that Mrs. Hamilton was a member of the *Engle* class because she died from lung cancer which was caused by her addiction to cigarettes containing nicotine. In his suit, Plaintiff alleged causes of action for strict liability, fraud by concealment, conspiracy to commit fraud by concealment, and negligence. In order to prevail on his fraudulent concealment claims, Plaintiff was required to prove that Mrs. Hamilton relied on a false statement by RJR that concealed a material fact about the health risks or addictive nature of smoking and/or on some act or statement made in furtherance of an agreement to conceal or omit material information. The primary basis of Plaintiff's fraudulent concealment claims was that RJR and the other tobacco companies marketed filtered cigarettes as being healthier while knowing that filtered cigarettes were no less hazardous than unfiltered cigarettes.

At trial, Plaintiff sought to prove Mrs. Hamilton's detrimental reliance in part through testimony relating to a conversation he had with Mrs. Hamilton about smoking when he was a teenager. Specifically, a conversation during which Mrs. Hamilton allegedly told Plaintiff that if he was going to smoke, he should smoke filtered cigarettes because they were "safe" based on information she got from advertisements. RJR objected on hearsay grounds, arguing that the portion of the testimony concerning where Mrs. Hamilton got the information about filtered cigarettes being safe was pure hearsay and did not fall within any exception. Plaintiff countered that, pursuant to *Lorillard Tobacco Co. v. Alexander*, 123 So. 3d 67 (Fla. 3d DCA 2013), the statement was admissible under the state of mind exception to the hearsay rule. The trial court overruled RJR's hearsay objection and allowed Plaintiff to testify as follows:

> Q: So did your mother have a conversation with you about smoking?
>
> A: Yes, sir.
>
> Q: All right. And what did she tell you about the type of cigarette that you should smoke?
>
> A: Filtered.
>
> Q: And what did she say about the filtered cigarette?
>
> A: It was a safe cigarette.
>
> Q: And did she tell you where she got that information from?

A: Yes, sir.

Q: And where did she get that information?

A: *From the advertising.*

(emphasis added) (internal objections omitted).

Plaintiff's counsel later highlighted this conversation while discussing "filter fraud" during closing arguments, telling the jury:

> So they knew that filters were a fraud. And she's smoking their filtered cigarettes, and she believed—she believed that it was a safe cigarette.
>
> You know, she had a conversation with her son, right? She's telling her son: Don't smoke. If you're going to smoke— if you have to smoke, smoke a filtered cigarette. Right? That's what she tells her son.
>
> *And where did she get that belief from? Where did she get that belief from? From advertising. Where did she get it? That's the testimony in this case, right?* That's what she believed. She relied on their fraud. Right?

(emphasis added).

In addition to the above conversation, Plaintiff also testified that he recalled watching a news program with Mrs. Hamilton in the 1970s wherein an executive from the tobacco companies stated there was no proven link between smoking cigarettes and lung cancer. Although Plaintiff was certain the executive represented the tobacco industry, he could not recall which tobacco company employed the executive or the specific tobacco companies which were the subject of the executive's statements. Plaintiff did not have a conversation with Mrs. Hamilton about the news program and Mrs. Hamilton did not tell him that she relied on the statements made therein.

The jury ultimately found for RJR on Plaintiff's fraudulent concealment claim and for Plaintiff on his claims for negligence, strict liability, and conspiracy to commit fraudulent concealment. The jury awarded Plaintiff $6 million in compensatory damages. The verdict form did not specify the amounts attributed to each cause of action. The jury later awarded Plaintiff an additional $4.6 million in punitive damages.

On appeal, RJR argues that the trial court erred in admitting Mrs. Hamilton's out-of-court statement of where she heard filtered cigarettes were safe under the state of mind exception to the hearsay rule. RJR maintains that this portion of Mrs. Hamilton's statement was a backward-looking statement and did not disclose anything about her state of mind at the time of the conversation or explain why she continued smoking filtered cigarettes. Rather, it was offered to prove the truth of the matter asserted, namely that Mrs. Hamilton had heard filtered cigarettes were safe from tobacco company advertising and not from some other source. As this statement was used to establish reliance, a key disputed issue in the case, the error was not harmless. We agree.

The "state of mind" exception to the hearsay rule, which is contained in section 90.803, Florida Statutes, allows the trial court to admit:

> (a) A statement of the declarant's then-existing state of mind . . . when such evidence is offered to:
>
> 1. Prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
>
> 2. Prove or explain acts of subsequent conduct of the declarant.

§ 90.803(3)(a), Fla. Stat. (2019). The exception does not, however, allow "[a]n after-the-fact statement of memory or belief to prove the fact remembered or believed," unless the statement involves certain issues regarding a declarant's will. § 90.803(3)(b)1., Fla. Stat.

Here, the portion of Mrs. Hamilton's statement that filtered cigarettes were safe was admissible as that statement was not offered to prove the truth of the matter asserted—that filtered cigarettes were in fact safe—but rather to show Mrs. Hamilton's then-existing state of mind. However, the portion of Mrs. Hamilton's statement that she heard filtered cigarettes were safe "from the advertising" did not disclose anything about her state of mind. Rather, it simply stated a fact: Mrs. Hamilton previously heard filtered cigarettes were safe from advertising and not from some other source. Indeed, Plaintiff's counsel relied on this statement during closing arguments to prove Mrs. Hamilton obtained this information from advertising. *See Penalver v. State*, 926 So. 2d 1118, 1132 (Fla. 2006) (reiterating that if a "statement is offered for the truth of the facts contained in the statement, then the statement is hearsay").

4

Plaintiff nonetheless maintains that the statement was admissible under *Alexander*. In that case, the trial court permitted the deceased smoker's wife to testify about several conversations she had with him regarding his smoking and his responses to her efforts to encourage him to quit smoking. 123 So. 3d at 75. Specifically, the wife was permitted to testify that the smoker continued to smoke because: "(1) he did not think that smoking was a problem; (2) he believed Kent cigarettes were safe because of their filters; (3) he believed the tobacco companies' representations because they knew their products best; and (4) he did not believe that the tobacco companies would make a product 'that would kill' anyone." *Id.* In holding the statements were properly admitted under the state of mind exception to the hearsay rule, the Third District reasoned:

> Those statements are clearly material and relevant to a key issue in this case: [the smoker's] detrimental reliance on the marketing and public relations materials produced and distributed by Lorillard and the tobacco industry in general. Similarly, the statements explained why [the smoker] smoked, why he chose to smoke Lorillard's product, and why he continued to rely on the information relayed by Lorillard and other members of the tobacco industry. . . .

> Contrary to Lorillard's argument, those statements were not after-the-fact statements of why [the smoker] smoked in the past, rather they were statements as to why [the smoker] continued to smoke at that time. [The smoker's] subjective beliefs were offered to prove his subsequent conduct and to explain his continued conduct of smoking and his continued reliance on the representations made by Lorillard and the other tobacco companies.

*Id.*

*Alexander* is distinguishable. First, unlike in *Alexander* where the statements were offered to explain the declarant's continued conduct of smoking, the statement in this case was made within the context of Mrs. Hamilton telling *Plaintiff* to smoke filtered cigarettes in the future. In other words, Mrs. Hamilton's statement to Plaintiff that she heard filtered cigarettes were safe from the advertising was not a statement of why *Mrs. Hamilton* continued to smoke filtered cigarettes at the time she had the conversation with Plaintiff. Second, even if the statement was partially offered to show Mrs. Hamilton's then-existing state of mind, the statement was undoubtedly also offered to prove the truth of the matter

asserted—that Mrs. Hamilton heard filtered cigarettes were safe from advertising and not from some other source—as illustrated by Plaintiff's counsel's statements during closing arguments.

Plaintiff also argues that the statement was admissible because "most states of mind are going to be based on knowledge gained and observations made previously." However, a hearsay statement which recounts "observations made previously" is by definition an "after-the fact statement of memory" and expressly excluded from the state of mind exception. § 90.803(3)(b)1., Fla. Stat. What Plaintiff is attempting to do is "piggyback" an otherwise inadmissible backward-looking statement onto an admissible statement. Doing so, however, both ignores and undermines the rule against hearsay. *See Shepard v. United States*, 290 U.S. 96, 105–06 (1933) (noting that if the distinction between forward looking statements and backward looking statements is ignored, "[t]here would be an end, or nearly that, to the rule against hearsay"); *Reed v. State*, 438 So. 2d 169, 172 (Fla. 1st DCA 1983) (Ervin, C.J., specially concurring) ("The reason for excluding after-the-fact statements of memory is that '[i]f these statements were admitted it would be easy for any individual to manufacture evidence to prove facts that had occurred in the past.'" (quoting Charles W. Ehrhardt, 1 Fla. Prac., *Evidence* § 803.3B (1977))).

The question then becomes whether the error in admitting the statement was harmless. Errors in evidentiary rulings in civil cases are subject to harmless error analysis. *See Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1260–65 (Fla. 2014). The supreme court explained the harmless error test in civil appeals as follows: "To test for harmless error, the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict. Alternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict." *Id.* at 1256.

It cannot be said the error was harmless in this case. In order for Plaintiff to prevail on his conspiracy to commit fraud by concealment claim, he was required to prove that Mrs. Hamilton detrimentally relied on an act or statement made in furtherance of RJR's agreement to conceal or omit material information concerning the health effects or addictive nature of cigarettes. Mrs. Hamilton's statement that filtered cigarettes were safe based on what she heard from advertising, in turn, was undoubtedly the strongest evidence of reliance in this case. Plaintiff's counsel all but acknowledged as much when arguing in favor of the statement's admission at trial, telling the court that, without the statement, RJR is "going to move for directed verdict if I don't—if I don't get this testimony."

Plaintiff insists, however, that any error was harmless because the statement "was hardly the only evidence of reliance in this case," and points to his own testimony at trial wherein he recalled watching a news program with Mrs. Hamilton where a representative from the tobacco industry denied there was a link between smoking and disease. Certainly, individualized reliance can be inferred from circumstantial evidence showing Mrs. Hamilton was exposed to tobacco industry statements and believed filtered cigarettes were safer. *See R.J. Reynolds Tobacco Co. v. Burgess*, 294 So. 3d 910, 912–14 (Fla. 4th DCA 2020) (recognizing that circumstantial evidence, such as evidence that the smoker was exposed to tobacco advertising and believed filtered cigarettes were safer, can establish reliance). However, considering the strong evidentiary value of Mrs. Hamilton's statement, it cannot be said there is no reasonable possibility that the error contributed to the verdict. *See Landmark Am. Ins. Co. v. Pin-Pon Corp.*, 155 So. 3d 432, 442 (Fla. 4th DCA 2015) (erroneous admission of hearsay evidence regarding code upgrade expenses not harmless even though corporate representative testified to similar substance).

For the foregoing reasons, we hold the trial court reversibly erred in admitting the statement at issue. Because the jury did not specify the amounts attributable to the fraud claim and non-fraud claims, we reverse and remand for a new trial on all issues except for the fraudulent concealment claim for which the jury found in favor of RJR. *See Philip Morris USA Inc. v. Gentile*, 281 So. 3d 493, 497 (Fla. 4th DCA 2019) (reversing and remanding for entry of a directed verdict in favor of the tobacco company on the fraud-based claims, and remanding for a new trial on the non-fraud claims because the jury awarded compensatory damages without specifying the amounts attributable to the non-fraud claims).

RJR also argues that Plaintiff's counsel made improper comments during closing arguments comparing it to a drug dealer. Although we need not reach the merits of this issue in light of our disposition on the hearsay issue, we caution Plaintiff's counsel "to be vigilant in crafting closing arguments that fall within the confines of permissibility." *Philip Morris USA, Inc. v. Tullo*, 121 So. 3d 595, 602 (Fla. 4th DCA 2013).

*Reversed and remanded for new trial.*

CIKLIN and KLINGENSMITH, JJ., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**