PER CURIAM.
The appellant, Lois Lovett Gianos, as Administrator Ad Litem of the Estate of Nick Gianos, appeals from the trial court’s order granting final judgment in favor of the Defendants, Deborah R. Baum, M.D. and Greene, Jacobson & Baum, M.D., P.A., in a medical malpractice case. We reverse and remand for a new trial because the trial court abused its discretion in prohibiting the plaintiff from commenting in closing argument that the defendant did not present the testimony of a pathologist at trial.
Mr. Gianos, who was obese, developed severe heart problems in September 1999 and underwent quadruple bypass surgery in March 2000. After undergoing the surgery and rehabilitation, Mr. Gianos ap *583 peared to recover. However, in a routine medical examination, Dr. Lewis discovered a growth or nodule in Mr. Gianos’s right lung. Dr. Lewis referred Mr. Gianos to Dr. Deborah Baum, a specialist in pulmonary medicine, who after determining that the growth was cancerous, arranged for the nodule or growth to be removed by a surgeon. After surgery, Mr. Gianos was admitted to the Intensive Care Unit (ICU), where he remained for approximately two days before moving to the Rockwell Suites at Boca Raton Community Hospital. He was moved back to the ICU one week later because he developed aspiration pneumonia. He stayed in the ICU for ten or eleven days before improving to the point that he was moved back to the Rockwell Suites on September 24, 2002. During the days he stayed in the suites, a nurse or therapist occasionally had to remove mucus that was accumulating in his mouth.
On September 25, 2002, around 5:30 p.m., a nurse contacted Dr. Baum and reported that Mr. Gianos had stridulous breathing. Dr. Baum determined that it was stridor, a harsh sound caused by upper airway obstruction, and ordered a ne-bulizer treatment of epinephrine and albu-terol. Dr. Baum did not come to the hospital at that time, but issued an order that she was to be contacted in the event Mr. Gianos’s condition worsened. At 9:50 p.m., Dr. Baum was contacted again because Mr. Gianos’s blood oxygen saturation was down to 85% and the stridor had increased. Dr. Baum ordered a chest x-ray, more medication, and that Mr. Gia-nos be transferred back to the ICU. Dr. Baum still did not come to the hospital.
Between 10:30 p.m. and 11:00 p.m., the nurse again contacted Dr. Baum to give her the results of the blood gas tests and to ask if it was all right for Mr. Gianos to sit in a chair because Mr. Gianos was more comfortable and able to breathe more easily sitting in a chair. Dr. Baum approved Mr. Gianos sitting in a chair, and Dr. Baum ordered a chest x-ray to be done in the morning. Around 2:30 a.m., September 26, 2002, the nurse noted stridor again and that Mr. Gianos’s saturation was down to 60%-70%. Concerned that the secretions might be blocking the airway, the nurse put him on 100% oxygen. At 2:54 a.m., his respiration was shallow and he had agonal breathing. The nurse called a “code blue” and started the “ambu bag.” The respiratory therapist was called in at 3:05 a.m., and Mr. Gianos was placed on a ventilator with 100% oxygen. However, the staff had difficulty getting the oxygen in because something was impeding it. After two to three minutes, it became clear the ventilator was having no effect. The staff then tried to suction the airway to clear it of the secretions obstructing it. This had no effect, and Mr. Gianos was not placed on the ventilator again. Consequently, Mr. Gianos went into cardiopulmonary arrest and died at 3:53 a.m.
Thereafter, plaintiff, Lois Lovett Gianos, as Administrator of the Estate of her husband, Mr. Gianos, brought this action for medical negligence against Dr. Baum. Plaintiff alleged that Dr. Baum failed to exercise reasonable care and deviated from the professional standard of care by failing to act on the signs and symptoms implying a critical upper airway obstruction, and by not directly evaluating Mr. Gianos or requesting evaluation by an individual capable of determining if Mr. Gianos suffered from an upper airway obstruction. Plaintiff further alleged that Dr. Baum’s failure to timely and appropriately intervene was the direct and proximate cause of Mr. Gianos’s death.
At trial, the plaintiff presented the testimony of Dr. Jesse Hall, M.D., a board certified internist and critical care physician, who testified regarding the standard *584 of care. Dr. Hall concluded that when Dr. Baum received the 9:50 p.m. phone call, she had a duty to arrange for a physician to inspect Mr. Gianos’s airway within the next hour and that her failure to do so deviated from the prevailing standard of care. Furthermore, he testified that it was more likely than not that had Dr. Baum inspected the airway or ordered another physician to do so, the complete airway obstruction could have been prevented.
The plaintiff also presented the testimony of Dr. Fatteh, a pathologist, who had performed the autopsy following Mr. Gia-nos’s death. His autopsy found that Mr. Gianos had an obstruction of the upper half of the trachea, a partial obstruction of the lower half of the trachea, and a complete obstruction of the main bronchi by a combination of aspirated material and mucus. Mr. Gianos’s obstruction was so severe that it caused Mr. Gianos’s lung to collapse, leading to his respiratory failure and ultimate death. The plaintiff presented another expert pathologist, Dr. Grover Hutchins, who opined that the cause of death was an upper airway obstruction due to mucus obstructing the trachea. Dr. Hutchins testified that he did not see any evidence of tension pneumothorax, a condition that develops where there is a hole in the surface of the lung that could cause lung collapse.
In response, the defendant presented only the testimony of Dr. William Fulker-son, who is not a pathologist, but an expert in internal medicine, pulmonary disease, and critical care. The most significant portion of his testimony was his conclusion that tension pneumothorax was the direct and proximate cause of Mr. Gianos’s cardiac arrest and subsequent death. His conclusion was in direct contradiction to the plaintiffs expert pathologists, who opined that the cause of death was upper airway obstruction due to mucus. Dr. Fulkerson based his conclusion on the emergency physician’s code report that indicated that the ambu bag became easier after needle decompression, which allowed air to escape and alleviated the pneumothorax. Accordingly, Dr. Fulkerson concluded that the cause of death was pneumothorax, not airway obstruction, and that Dr. Baum did not violate the standard of care.
Dr. Fulkerson further testified that secretions and bodily fluids in general tend to collect in the sides and the flanks of the body during the post-mortem period, and therefore, the mucus plug developed after Mr. Gianos died. The plaintiff objected to this testimony, arguing that Dr. Fulker-son’s testimony about post-mortem secretions should not be admitted into evidence because the testimony concerned a pathology matter, and Dr. Fulkerson was not a pathologist. The trial court overruled the objection.
Plaintiffs counsel later commented in closing that the defense failed to present testimony from a pathologist during trial:
Remember, the greater weight of the evidence is the more persuasive force and affect of the entire evidence in the case. And we have an autopsy report from an eminent, well-qualified pathologist. We have the Chief of Autopsy/Pathology at Johns Hopkins. And we don’t have any pathologists on the Defendant’s side.
(emphasis added). Defense counsel objected to this comment, and the trial court sustained the objection and advised the jury to disregard the comment. The jury returned with a verdict for the defendant.
The plaintiff, Ms. Gianos, argues two points on appeal. First, Ms. Gianos argues that the trial court abused its discretion when it allowed Dr. Fulkerson to testify on a pathology matter, specifically whether and where secretions would col *585 lect during the post-mortem period, when Dr. Fulkerson was not a pathologist. Secondly, Ms. Gianos argues that the trial court erred by prohibiting plaintiffs counsel from commenting during closing argument on the defendant’s failure to call a pathologist.
First, we conclude that the trial court did not abuse its discretion in allowing Dr. Fulkerson to testify on a pathology matter. A trial court’s decision on the qualifications of an expert is ordinarily conclusive, and entitled to great weight on appeal, unless it is shown that the trial court applied an erroneous legal standard. Lake Hosp. & Clinic, Inc., v. Silversmith, M.D., 551 So.2d 538, 545 (Fla. 4th DCA 1989). To qualify as an expert in a given area, it must be shown that the witness acquired special knowledge of the subject matter either by study or through experience. Id.
We find that Dr. Fulkerson, a board-certified pulmonologist and critical care physician, was qualified to give an opinion regarding post-mortem changes in the body, specifically in the upper and lower airway. Dr. Fulkerson also testified that he had knowledge as to what happens to secretions in the post-mortem period based on his training as a physician and work in pathology in medical school. Although the fact that he may not have been board-certified in pathology might have had a bearing on the weight and credibility given to his testimony, it did not render him incompetent to testify as to his opinion.
We do, however, find error and an abuse of discretion in the trial court’s decision to preclude the plaintiff from commenting during closing argument that “we don’t have any pathologists on the Defendant’s side.” Plaintiffs counsel simply commented on the defendant’s failure to present testimony of a witness with certain qualifications, namely a pathologist. As such, the comment was appropriate because it was a comment on the defendant’s lack of evidence to rebut the plaintiffs evidence. We find support for our conclusion in Williams v. State, 882 So.2d 1082 (Fla. 4th DCA 2004), where counsel for the State in a civil proceeding under the Jimmy Ryce Act argued, “I submit to you the evidence is clear. The defense never put on an expert to counter [the State’s expert witness]. You heard from one expert.” This Court held that such a comment was appropriate, explaining:
In civil cases, attorneys are afforded great latitude in presenting closing arguments, as long as their comments are confined to arguing the application of law to the evidence presented in the case, as well as logical deductions therefrom. [citations omitted]. In this case, counsel’s argument constituted fair comment on the record evidence which, as it stood, lacked any defense rebuttal of the testimony of the State’s expert as to defendant’s propensity to commit new sexually violent offenses.
Id. at 1084.
In this case, it was undisputed that the defendant did not present any testimony from a pathologist, and under these circumstances, the comment by plaintiff that the defendant did not present any evidence from a pathologist was a fair comment on the evidence presented. The trial court should have allowed the plaintiff to comment on the failure of the defendant to call a pathologist, and for this reason, a new trial is warranted.
Thus, the final judgment in favor of the defendants, Dr. Baum, M.D. and Green, Jacobson & Baum, M.D., P.A. is reversed, and we remand for a new trial.

Reversed and Remanded for New Trial.

*586 GUNTHER, FARMER, JJ., and KRATHEN, DAVID H., Associate Judge, concur.