DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.J. REYNOLDS TOBACCO COMPANY** and
**PHILIP MORRIS USA INC.,**
Appellants,

v.

**DEBORAH NEFF,** as Personal Representative
of the Estate of Dorothy Milinkovich,
Appellee.

No. 4D19-2646

[July 14, 2021]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. 2007-CV-036745.

Val Leppert and William L. Durham II of King & Spalding LLP, Atlanta, Georgia, for appellant R.J. Reynolds Tobacco Company, and Geoffrey J. Michael and David M. Menichetti of Arnold & Porter Kaye Scholer LLP, Washington, D.C., for appellant Philip Morris USA Inc.

Scott Schlesinger, Jonathan Gdanski, Steven Hammer, and Brittany Barron of Schlesinger Law Offices, Fort Lauderdale, and Thomas J. Seider and Celene H. Humphries of Brannock Humphries & Berman, Tampa, for appellee.

LEVINE, J.

In this case, we once again review the actions of an attorney who made several improper arguments to the jury during closing argument. Once again, we have a trial court that failed to sustain contemporaneous objections to several of these improper arguments. And once again, we reverse and remand due to these improper arguments made during closing arguments.

Appellants, R.J. Reynolds and Philip Morris, appeal a final judgment for wrongful death in favor of Deborah Neff, as the personal representative of the estate of Dorothy Milinkovich, for $4 million in compensatory damages and $6 million in punitive damages. Appellants raise several

issues. We discuss only two of the issues: the improper arguments made by Neff's counsel and the admission of advertisements as it relates to the First Amendment. Neff also cross-appeals, challenging the verdict form, which required the jury to make a conspiracy finding for each defendant. We reverse as to the closing argument and also write to give guidance on the admission of the advertisements. As to the cross-appeal, we also reverse.

The daughter of the decedent filed a wrongful death action against Reynolds for strict liability, fraud by concealment, conspiracy to commit fraud by concealment, and negligence. She proceeded against Philip Morris with a single count of conspiracy.

The decedent was born in 1923 and began smoking at the age of thirteen or fourteen. She was diagnosed with lung cancer in 1994 and died three months later at the age of seventy-one.

During phase I of the trial, an addiction expert testified regarding the decedent's addiction. A historian expert testified regarding the tobacco industry's decades-long conspiracy to conceal smoking's harmful effects. During the historian's testimony, Neff introduced several modern-day cigarette advertisements, including advertisements published in *Glamour* magazine in 2013.

Before trial, Reynolds had moved in limine to exclude the *Glamour* magazine advertisements. Reynolds argued the advertisements were lawful commercial speech protected by the First Amendment and that it could not be punished for exercising its constitutional right to advertise its products. The trial court denied the motion in limine, stating, "I don't see this as a First Amendment issue."

During closing arguments, Neff's counsel repeatedly argued that appellants conceded the decedent was addicted to cigarettes. Reynolds objected to the argument as "a total misstatement," which the trial court overruled. Neff's counsel characterized appellants' defense—that the decedent's addiction did not cause her disease—as "the last refuge of the scoundrel." Reynolds objected on the grounds that it was a personal attack on counsel. The trial court stated, "All right" and informed the jury that counsels' "opinions don't matter" and to "disregard . . . any comments on the person."

Also during closing, Neff's counsel chastised appellants for admitting medical causation during trial: "After the Judge read to you they deny everything. . . . In late March, March 17th, the morning after Dr. Burns

was on the stand, they admitted that her smoking caused cancer, after denying it." The trial court overruled Reynolds's objection to an attack on the defense. Neff's counsel argued that appellants had admitted compensatory damages: "[T]here are compensatory damages. Nobody has denied that. That's admitted, too. There are damages in this case." The trial court overruled Reynolds's objection.

Over objection, Neff's counsel encouraged the jury "to punish a wayward corporation that has erred, that has lost its moral compass, that has acted as an evildoer and a wrongdoer for decades . . . ." Neff's counsel referred to appellants as "an enterprise of death." The trial court overruled Reynolds's objection to the "enterprise of death" remark as being inflammatory. Neff's counsel further argued that appellants had "reaped an industry of death and billions and billions of profit . . . ."

Neff's counsel quoted from Dr. Martin Luther King: "The arc of the moral universe is long, but it bends toward justice." Neff's counsel added, "It is a long and windy road, but it indeed bends towards justice." Reynolds objected to invoking Dr. King, a civil rights leader, as well as the particulars of this quote. The trial court overruled the objection and a subsequent motion for mistrial, but reminded the jury that "[t]his is argument, ladies and gentlemen."

Over Reynolds's objection to the following as being an inflammatory argument, Neff's counsel quoted a passage from George Orwell's novel *1984*:

> So this is from a book, 1984 by George Orwell, and it was written with this idea of Big Brother, who was this all-powerful entity who was able to dictate and control society. And there was this rebel in the book, Winston. And Winston was this character who was trying to rebel against George Orwell. And the most pivotal theme in the book has the character O'Brien standing over Winston, and he's about to embark on the worst part of the book. Before he makes sure he understands one thing. And this is what he says to him. He says, "And above all we do not allow the dead to rise up against us. *You must stop imagining that posterity will vindicate you, Winston. Posterity will never hear of you. You'll be lifted clean out of the stream of history.* We shall turn you into a gas and pour you into a stratosphere. Nothing will remain of you, not a name in a registry, not a memory in a living brain. You will have been annihilated in the past as well as in the future. You will have never existed."

> *And so through this process through your verdict we ask you to please ensure that [the decedent], their victim, is remembered and that she's not forgotten.*

(emphasis added). The trial court also denied a subsequent motion for mistrial based on this quote.

Neff's counsel also argued that appellants "didn't have anybody from the companies sitting here . . . ." Reynolds objected based on a prior ruling in limine and argued that the comment was improper, inflammatory, and highly prejudicial. The trial court sustained the objection. Neff's counsel later argued that he liked Reynolds's counsel, "[b]ut he's not R.J. Reynolds." Reynolds objected, and the trial court again sustained the objection. The trial court denied appellants' motions for mistrial.

During a pretrial hearing, the trial court had granted appellants' motion in limine to prevent Neff from commenting that appellants did not have any corporate representatives present at trial. During that pretrial hearing, Neff's counsel had agreed that case law did not allow such a comment during phase I.

Also during closing, Neff's counsel twice argued, "I don't see that as a valid defense." The trial court overruled Reynolds's objections to the argument as a personal attack on the defense and a personal opinion. Later, Neff's counsel argued that appellants "should be protecting children, not addicting them" and "should be working on curing cancer, not causing cancer." The trial court overruled Reynolds's "personal opinion" objection.

Over Neff's objection, the jury verdict form required the jury to make separate conspiracy findings for each defendant. Specifically, the following form was submitted to the jury:

> Please state whether [the decedent] reasonably relied to her detriment on any statement of material fact that was made in furtherance of Defendants' agreement to conceal or omit material information not otherwise known or available, concerning the health effects or addictive nature of smoking cigarettes, with the intention that smokers and members of the public would rely to their detriment, and, if so, whether such reliance was a legal cause of her death:
>
> | | | |
> |---|---|---|
> | R.J. Reynolds Tobacco Co. | Yes____ | No____ |
> | Philip Morris USA Inc. | Yes____ | No____ |

4

The jury answered yes to both these questions. The jury returned a verdict for Neff, awarding $4 million in compensatory damages.

During phase II, the parties presented evidence concerning appellants' finances and profits. Before closing arguments in phase II, the trial court instructed the jury that "any amount of money that you award as punitive damages against the defendant must be based solely on harms caused to her by that defendant. You may not punish Philip Morris and RJ Reynolds for any harms suffered by persons other than [the decedent]."

Minutes after this instruction was read, Neff's counsel argued to the jury: "I recommend that you find them equally for what they did to [the decedent and her daughter] and millions of family members—" The trial court sustained Reynolds's objection that the case was "about one plaintiff" and that the argument was "[c]ontrary to the instruction." The trial court gave the jury the following curative instruction: "You may not punish Philip Morris and RJ Reynolds for any harm suffered by persons other than [the decedent]."

During rebuttal arguments in phase II, Neff's counsel commented on why he litigates *Engle* cases: "And I always—I always want to—I want to get on my feet and I want to say something beautiful and American and true. That's the only thing I care about. That's why I do this. I do what I think is important to do—" The trial court sustained Reynolds's objection that the argument was testimonial.

The jury awarded $6 million in punitive damages. This appeal and cross-appeal follow.

## I. Improper Arguments

We review a trial court's rulings on closing argument for abuse of discretion. *Gianos v. Baum*, 941 So. 2d 581, 585 (Fla. 4th DCA 2006). "A trial court's denial of a motion for mistrial and a motion for new trial based on improper closing arguments are reviewed for abuse of discretion." *Whitney v. Milien*, 125 So. 3d 817, 818 (Fla. 4th DCA 2013).

"If the issue of an opponent's improper argument has been properly preserved by objection and motion for mistrial, the trial court should grant a new trial if the argument was 'so highly prejudicial and inflammatory that it denied the opposing party its right to a fair trial.'" *R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753, 764 (Fla. 4th DCA 2016) (quoting *Engle v. Liggett Grp., Inc.,* 945 So. 2d 1246, 1271 (Fla. 2006)). Where,

however, the trial court sustains an objection, a party must request a mistrial or curative instruction to preserve the issue for appeal. *Companioni v. City of Tampa*, 51 So. 3d 452, 456 (Fla. 2010). Finally, for unpreserved arguments, a new trial should be granted only if "the unobjected-to argument being challenged was improper, harmful, incurable, and so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial . . . ." *Murphy v. Int'l Robotic Sys., Inc.*, 766 So. 2d 1010, 1030 (Fla. 2000).

Further, "in evaluating whether the errors were harmless, we may consider 'the cumulative effect' of preserved and unpreserved error." *Calloway*, 201 So. 3d at 762 (quoting *Allstate Ins. Co. v. Marotta*, 125 So. 3d 956, 961 (Fla. 4th DCA 2013)). Under the harmless error standard, "the beneficiary of the error must prove that there is no reasonable possibility that the error complained of contributed to the verdict." *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251, 1253 (Fla. 2014). "Although the trial court's ruling is entitled to substantial deference, there is a point where the totality of all errors and improprieties are pervasive enough to raise doubts as to the overall fairness of the trial court proceedings." *Calloway*, 201 So. 3d at 764 (citation and internal quotation marks omitted).

The supreme court has explained the purpose of closing argument as follows:

> The purpose of closing argument is to help the jury understand the issues in a case by "applying the evidence to the law applicable to the case." *Hill v. State*, 515 So. 2d 176, 178 (Fla. 1987). Attorneys should be afforded great latitude in presenting closing argument, but they must "confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence." *Knoizen v. Bruegger*, 713 So. 2d 1071, 1072 (Fla. 5th DCA 1998); *see also Venning* v. Roe, 616 So. 2d 604 (Fla. 2d DCA 1993). Moreover, closing argument must not be used to "inflame the minds and passions of the jurors so that their verdict reflects an emotional response . . . rather than the logical analysis of the evidence in light of the applicable law." *Bertolotti v. State*, 476 So. 2d 130, 134 (Fla. 1985).

*Murphy*, 766 So. 2d at 1028.

### a. Preserved Improper Arguments that were Overruled

We find that the trial court, in light of the entire record, abused its discretion in overruling objections to (a) quoting from Orwell's *1984*, (b) quoting from Dr. King, (c) referring to the tobacco industry as an "enterprise of death," (d) misstating the evidence, (e) attacking appellants for conceding medical causation, and (f) injecting Neff's counsel's personal opinion. None of these comments prompted a "logical analysis of the evidence," but rather were designed to inflame the emotions of the jury.

This court, in fact, recently determined that plaintiff's counsel's reading of the very same passage from Orwell's *1984* amounted to improper inflammatory argument. *R.J. Reynolds Tobacco Co. v. Kaplan*, No. 4D18-2880, 2021 WL 2559664 (Fla. 4th DCA June 23, 2021). In *Kaplan*, the trial court similarly overruled the defense objections and denied the motion for new trial regarding the improper closing arguments. This court further expressed its concern in *Kaplan* that this particular plaintiff's counsel's office had been rebuked by this court for making multiple similarly improper arguments in the past:

> It is disturbing that on at least *four* prior occasions, this court has addressed improper inflammatory closing arguments appealing to passion by trial counsel Scott P. Schlesinger or his firm Schlesinger Law Offices, P.A. *See Oshinsky-Blacker v. Philip Morris USA, Inc.*, L.T. Case No. CACE08-025841 (Fla. 17th Cir. Ct. Mar. 6, 2017), *aff'd*, 249 So. 3d 643 (Fla. 4th DCA 2018) (per curiam, affirming new trial); *Cohen*, 203 So. 3d at 948 (affirming the trial court's granting a new trial because "counsel made arguments which crossed the line into 'take responsibility' and 'apologize' territory," characterizing counsel's arguments as "improper" and "egregious and unacceptable"); *Calloway*, 201 So. 3d at 761 ("These comments were designed for no other purpose than to inappropriately evoke sympathy from the jury."); *Tullo*, 121 So. 3d at 601 (determining that the argument implying tobacco companies were as culpable as drug dealers was improper). Three of these cases resulted in a new trial, and the fourth, *Tullo*, very well may have but for the defense's failure "to raise a contemporaneous objection to any of the challenged comments." *Id.* As our supreme court stated in *Engle* with respect to inflammatory closing arguments in that case, we similarly "condemn these tactics of" Mr. Schlesinger and conclude that his "conduct [was] unbecoming an attorney practicing in our state courts." *Engle*, 945 So. 2d at 1273.

2021 WL 2559664, at *5. Similarly, when this case started trial on February 28, 2019, appellee also had the benefit of the same four cases referred to in *Kaplan*. Just like in *Kaplan*, despite the rulings in all four cases, plaintiff's counsel still made improper and inflammatory arguments.

Although this court determined in *Kaplan* that the *1984* argument and another argument were improper, it found that they did not rise to the level of requiring reversal because the comments were "brief and isolated." *Id.* at *6. Additionally, although not dispositive, the verdict in *Kaplan* returned by the jury—$2.1 million in compensatory damages and $2,971,000 in punitive damages—was "far less than requested by Plaintiff's counsel." *Id.* This court further stated, based on its extensive review of the record, that the jury did not appear to be affected by the argument.

Unlike in *Kaplan*, here the verdict returned by the jury was not "far less" than the amount requested by Neff's counsel. Additionally, unlike in *Kaplan*, and most importantly, the improper comments in the instant case were not brief and isolated but rather pervaded the entire closing argument. It cannot be said, based on the record, that the jury was not affected by all the improper arguments. *See also R.J. Reynolds Tobacco Co. v. Mahfuz*, No. 4D19-2236, 2021 WL 2673382 (Fla. 4th DCA June 30, 2021) (reversing where plaintiff's counsel quoted from the same *1984* passage and made other improper arguments).

In addition to quoting from Orwell's *1984*, Neff's counsel also improperly relied on a quote from Dr. King that "[t]he arc of the moral universe is long, but it bends toward justice." We find that using this quote, especially when citing to Dr. King, was improper because it attempted to bolster the case by appealing to justice as well as association with Dr. King, a noted civil rights leader. Further, there was no nexus between the tobacco litigation and this particular quote from Dr. King. "The argument that the case is about 'justice' for the victim or the victim's family has been uniformly condemned." *Cardona v. State*, 185 So. 3d 514, 522 (Fla. 2016) (reversing where during closing argument prosecutor repeatedly asked the jurors to return a verdict that brings "justice" to the victim); *see also Davis v. State*, 136 So. 3d 1169, 1197 (Fla. 2014) (holding that argument that the victim's siblings would want to know that justice was imposed for the victim's murder was improper); *Dorsey v. State*, 942 So. 2d 983, 986 (Fla. 5th DCA 2006) (finding arguments "demanding justice for the victim" were improper); *Engle*, 945 So. 2d at 1273 (condemning comments invoking civil rights leaders such as Dr. King to appeal to a jury's sense of outrage for injustices committed upon

minorities).

The trial court also failed to recognize the impropriety of other arguments, which were preserved by contemporaneous objections. Neff's counsel called appellants "an enterprise of death." *See Mahfuz*, 2021 WL 2673382, at *1 (disapproving argument describing tobacco companies as a "soulless enterprise of death"). Neff's counsel repeatedly misstated that appellants had conceded addiction and improperly attacked appellants for admitting medical causation during trial. Neff's counsel also improperly injected his personal opinion when he twice stated, "I don't see that as a valid defense." He again improperly injected his personal opinion, which was inflammatory, when he stated that appellants "should be protecting children, not addicting them" and "should be working on curing cancer, not causing cancer." These comments were incorrect statements of the evidence or served no purpose other than to inflame the jury.

### b. Preserved Improper Arguments that were Sustained

Although the trial court properly recognized the impropriety of other objected-to comments, the trial court's response to those comments was insufficient when considering the cumulative nature of all of the improper arguments in this case. These comments include (a) encouraging the jury to punish appellants for what they did to "millions of family members," (b) twice referring to the absence of appellants' corporative representatives at trial in violation of a pretrial order in limine, (c) referring to appellants' defense as "the last refuge of the scoundrel," and (d) stating why Neff's counsel litigates *Engle* cases.

In *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007), the United States Supreme Court held that, when awarding punitive damages, "[e]vidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible . . . ." However, "a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties." *Id.* Neff's counsel asked the jurors to punish appellants for what they did to the decedent, the decedent's daughter, and "millions of family members." Thus, Neff's counsel expressly asked the jury to punish appellants for harm suffered by other smokers and their families. Neff's counsel did not merely ask the jury to consider harm suffered by others. Instead, he did exactly what *Williams* clearly prohibits. To make it even more disconcerting, Neff's counsel made this comment mere minutes after the trial court instructed the jury that it may not punish appellants for harm suffered by persons other than the decedent.

9

Neff's counsel also violated the law by referencing the absence of appellants' corporative representatives at trial. *Calloway* is instructive. In that case, the trial court sustained objections to plaintiff's counsel's closing argument that "'[The Tobacco Companies] never give up. There are no corporate representatives here.' 'There are no corporate representatives here. There are lawyers here.'" 201 So. 3d at 761. This court stated that "[c]omments referencing the absence of corporate representatives at trial unfairly implied that the defendants were not showing proper respect for the trial, the decedent, and the plaintiff." *Id.* We concluded that the cumulative effect of numerous improper comments by the plaintiff's attorney during opening, rebuttal, and closing arguments warranted a new trial.

Based on *Calloway*, the trial court properly sustained Reynolds's objection to comments on the absence of a corporate representative. Neff's counsel twice referred to the absence of corporative representatives in violation of an order in limine and contrary to Neff's counsel's agreement during a pretrial hearing that case law prohibits such a comment. Further, Neff's counsel had already been reprimanded for this very same comment in *Calloway*.

Additionally, Neff's counsel personally attacked Reynolds's counsel when he referred to Reynolds's defense as the "last refuge of the scoundrel," essentially comparing Reynolds's counsel to being a "scoundrel."

Finally, in phase II, Neff's counsel improperly commented about why he litigates *Engle* cases: "And I always—I always want to—I want to get on my feet and I want to say something beautiful and American and true. That's the only thing I care about. That's why I do this. I do what I think is important to do—" The trial court properly sustained Reynolds's objection that the argument was testimonial.

### c. Unpreserved Improper Arguments

Other improper remarks by Neff's counsel, which may not have been sufficiently preserved, also may be considered along with the preserved comments in engaging in a harmless error analysis. *See Marotta*, 125 So. 3d at 961. Neff's counsel (a) misstated that appellants admitted compensatory damages; (b) improperly encouraged the jury to "punish a wayward corporation that has erred, that has lost its moral compass, that has acted as an evildoer and a wrongdoer for decades"; and (c) improperly stated that appellants have "reaped an industry of death and billions and

10

billions of profit."

In summary, we are required to reverse based on the preserved errors, as well as cumulative effect of the preserved and unpreserved errors including, but not limited to, invoking Dr. King in calling for "justice;" quoting Orwell's dystopian novel *1984*; calling appellants "an enterprise of death" and "scoundrel[s]"; suggesting that the jury should punish appellants for harm to others; twice referring to the lack of corporate representation in the courtroom, contrary to an order in limine; and making several other improper comments. This is a case in which the totality of all errors and improprieties is so pervasive as to raise considerable doubts about the overall fairness of the trial court proceedings. *Calloway*, 201 So. 3d at 764.

We also find that, when considering the totality of the preserved and unpreserved errors, all the improper arguments are not harmless error. We are not saying that any one statement in and of itself amounts to reversible error. We are merely recognizing in the totality of improper arguments, preserved and unpreserved, that the errors were harmful error, requiring a new trial.

## II. Applicability of First Amendment to Commercial Advertisements

Appellants next contend the trial court erred in admitting evidence of their modern-day advertising because it was irrelevant to Neff's claims and protected by the First Amendment.

A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. *Philip Morris USA, Inc. v. Pollari*, 228 So. 3d 115, 120 (Fla. 4th DCA 2017). "Whether the trial court has complied with the guarantees of due process is subject to de novo review." *VMD Fin. Servs., Inc. v. CB Loan Purchase Assocs., LLC*, 68 So. 3d 997, 999 (Fla. 4th DCA 2011) (citation omitted). A trial court's ruling on a First Amendment violation is reviewed de novo. *Thoma v. O'Neal*, 180 So. 3d 1157, 1159 (Fla. 4th DCA 2015).

Initially, we find that appellants failed to preserve their relevancy argument by failing to raise it below. *Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010). Thus, only the First Amendment issue is properly before this court. Because we reverse based on the improper closing arguments, we do not reach the merits of this constitutional issue. *See In re Holder*, 945 So. 2d 1130, 1133 (Fla. 2006); *Singletary v. State*, 322 So. 2d 551, 552 (Fla. 1975). However, we write for the limited purpose of offering guidance to the trial court as to the proper standard for First Amendment analysis

for commercial speech.

The First Amendment "protects commercial speech from unwarranted governmental regulation" unless it concerns unlawful activity or is misleading. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561, 566 (1980); *see also State v. Bradford*, 787 So. 2d 811, 820 (Fla. 2001) ("[T]he State may regulate commercial speech relating to unlawful activities, and commercial speech that is misleading."). Commercial speech that concerns lawful activity and is not misleading may still be regulated if "the asserted governmental interest is substantial," "the regulation directly advances the governmental interest asserted," and "it is not more extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 566; *see also Bradford*, 787 So. 2d at 820.

In this case, the trial court incorrectly concluded there was no First Amendment issue. By failing to recognize the First Amendment was implicated, the trial court did not engage in any First Amendment analysis and, as such, failed to apply the correct standard. Therefore, on retrial, the trial court should consider the admissibility of the modern-day advertisements by applying the standard set forth in *Central Hudson*.

**III. Cross-Appeal**

In her cross-appeal, Neff argues that the trial court erred in requiring the jury to make separate conspiracy findings for each defendant. Neff argues that conspiracy is all-or-nothing and that if a conspiracy causes harm to a plaintiff, then all co-conspirators are liable.

"A trial court is accorded broad discretion in the formulation of appropriate jury instructions and its decision should not be reversed unless the error complained of resulted in a miscarriage of justice or the jury instructions were reasonably calculated to confuse or mislead the jury." *Chevron U.S.A., Inc. v. Forbes*, 783 So. 2d 1215, 1218 (Fla. 4th DCA 2001). "Where, however, . . . the analysis turns on a pure question of law, our standard of review is de novo." *Chacon v. Philip Morris USA, Inc.*, 254 So. 3d 1172, 1175 (Fla. 3d DCA 2018).

"To state a claim for civil conspiracy, a plaintiff must allege: (1) an agreement between two or more parties, (2) to do an unlawful act or to do lawful act by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) damage to the plaintiff as a result of the act performed in furtherance of it." *Gilison v. Flagler Bank*, 303 So. 3d 999, 1004 (Fla. 4th DCA 2020). Each co-conspirator "need only know of the scheme and

12

assist in it in some way to be held responsible for all of the acts of his coconspirators." *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008) (citation omitted). A co-conspirator need not have caused any direct injury to the claimant. *Rey v. Philip Morris, Inc.*, 75 So. 3d 378, 383 (Fla. 3d DCA 2011). Co-conspirators are "jointly and severally liable for the acts of all participants in the scheme." *Id.*

Thus, by definition, a conspiracy requires an agreement between two persons. One cannot engage in civil conspiracy alone. Although the jury answered yes to both conspiracy questions on the jury verdict form, the jury verdict form had the potential to mislead or cause confusion. Contrary to appellants' suggestion, the fact that the jury did not return an inconsistent verdict does not mean that the verdict form was proper or a correct statement of law. "[T]he test for reversible error arising from an erroneous jury instruction is not whether the instruction misled, but only whether it reasonably might have misled the jury." *McPhee v. The Paul Revere Life Ins. Co.*, 883 So. 2d 364, 368 (Fla. 4th DCA 2004); *see also Francis-Harbin v. Sensormatic Elecs., LLC*, 254 So. 3d 523, 525 (Fla. 3d DCA 2018) ("A legally inconsistent verdict is one which contains two or more findings which, as a matter of law, cannot co-exist."). To avoid the potential for an inconsistent verdict, this particular verdict form question should not be used at retrial.

In conclusion, regarding appellee's improper arguments, we find the preserved errors, as well as the cumulative effects of the unpreserved errors, mandate that we reverse and remand for a new trial. We make the following observations. The four prior cases of improper arguments, known to appellee's counsel at the start of this trial, did not prevent or alter his use of improper arguments. The trial court did not act sufficiently when confronted with these types of improper arguments. The numerous improper arguments cause us to doubt the overall fairness of the trial proceedings. Finally, as a result, all the time and effort that was put into this trial was for naught. Thus, once again, we must reverse.

*Reversed and remanded for a new trial.*

MAY, J., concurs specially with opinion.
FORST, J., concurs specially with opinion.

MAY, J. specially concurring.

I join in the majority opinion because our court has chosen to go down the condemnation and reversal path regarding improper comments made

13

in closing arguments in these tobacco cases. *R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753 (Fla. 2016) (en banc). To be sure, there are lines drawn in the commentary sand which should not be, but have been, crossed in too many closing arguments we review. *See, e.g., R.J. Reynolds Tobacco Co. v. Mahfuz*, No. 4D19-2236, 2021 WL 2673382 (Fla. 4th DCA June 30, 2021); *R.J. Reynolds Tobacco Co. v. Kaplan*, No. 4D18-2880, 2021 WL 2559664 (Fla. 4th DCA June 23, 2021) (on rehearing); *Oshinsky-Blacker v. Philip Morris USA Inc.*, 249 So. 3d 643 (Fla. 4th DCA 2018); *Cohen v. Philip Morris USA, Inc.*, 203 So. 3d 942 (Fla. 4th DCA 2016); *R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753 (Fla. 4th DCA 2016); *Philip Morris USA, Inc. v. Tullo*, 121 So. 3d 595 (Fla. 4th DCA 2013).

I agree with Judge Gross's special concurrence in *Mahfuz*, 2021 WL 2673382, at \*3. It is not that I condone the name-calling, violation of orders in limine, and literary themes and analogies that go beyond the pale. But I wonder why counsel chose to go there. Our supreme court all but nailed tobacco's coffin shut in *Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1271 (Fla. 2006). *Engle* substantially reduced the plaintiff's burden of proof and left very little to litigate. So why resort to a game plan that threatens the life of a jury verdict?

Like Judge Gross, I suggest very few jurors are shocked by the facts in tobacco cases. I doubt there is much that plaintiffs' counsel can say that will inflame juries to the point the trial becomes unfair. Admittedly, there are some analogies (Nazis, slavery, the devil, etc.) that cannot be tolerated. It is just so unnecessary in my view.

Creativity in story telling has its place. Use of literary works and quotes can hold the attention of jurors. Were we writing on a clean slate, I would condemn some, and warn against the use of other, references and "creative" name-calling that occurred in this case. I would conclude, as I did in *Calloway*, that they were harmless; not because they are acceptable, but because there is no reasonable possibility that the error contributed to the verdict. *Special v. W. Boca Med. Ctr.*, 160 So. 3d 1251 (Fla. 2014). Alas, we are not writing on a clean slate, far from it. And so, I am precedent bound to concur rather than dissent.

Forst, J., specially concurring.

I concur in the reversal opinion, remanding for a new trial. I agree that plaintiff's counsel (Schlesinger Law Offices, P.A.) used closing argument to unduly "inflame the minds and passions of the jurors so that their verdict reflects an emotional response . . . rather than the logical analysis of the evidence in light of the applicable law." *Bertolotti v. State,* 476 So. 2d 130,

134 (Fla. 1985).

Prior to the trial in the instant case, plaintiff's counsel had on four occasions used closing argument to essentially grasp defeat from the jaws of victory, crossing the line from acceptable to unacceptable closing argument rhetoric in a manner that led to either the trial court or this court reversing the jury verdict and award of damages in favor of counsel's client and remanding for a new trial. *See R.J. Reynolds Tobacco Co. v. Kaplan*, No. 4D18-2880, 2021 WL 2559664, at *5 (Fla. 4th DCA June 23, 2021) (listing the four reversals). At oral argument for the instant case, Mr. Schlesinger argued for the appellee. He acknowledged these four reversals but exclaimed that he and his firm had learned from them and here "there w[ere] no biblical references, no serpents, no devils, no personal references, no references to family members, no references to lawyers reacting emotionally, no comparisons to drug dealers, no [allegations of] criminal conduct . . . ." Instead, the firm now uses "literature, music, artwork, . . . and popular culture" references, with Mr. Schlesinger asserting that "almost everything I said [during closing argument in the instant case] was perfectly appropriate."

It is encouraging that plaintiff's counsel is no longer characterizing the tobacco companies as "the devil." However, the panel's opinion explains that there was quite a bit said during this trial that was *not* appropriate, including several instances where counsel presented argument that had been expressly precluded by the trial court during the pre-trial conference, such as noting that the defendants' corporate representatives were not present at trial.

Shortly after the oral argument in the instant case, this court issued two opinions that are critical of the Schlesinger firm's closing argument in those cases, particularly counsel's reference to *1984* that Mr. Schlesinger acknowledged is part of his firm's closing argument "template." *R.J. Reynolds Tobacco Co. v. Mahfuz*, No. 4D19-2236, 2021 WL 2673382 (Fla. 4th DCA June 30, 2021); *R.J. Reynolds Tobacco Co. v. Kaplan*, No. 4D18-2880, 2021 WL 2559664 (Fla. 4th DCA June 23, 2021). In defending the use of the *1984* reference and other challenged comments at this case's oral argument, Mr. Schlesinger stated "we follow the rules *when you tell us what they are*." (emphasis added). Moreover, in reference to *1984*, he claimed that a number of trial judges "heard the quote from Orwell, passed on it, whether it was either without objection by the defendants or with objection, and nobody ever brought it up subsequently on appeal."

It may be true that some trial court judges overruled objections to the *1984* or MLK quotes and, for whatever reason (not objected to at trial; not

raised on appeal; an isolated comment; damage was limited), these specific statements had not been rebuked at the appellate level prior to the trial in the instant case. Thus, *Kaplan*, *Mahfuz*, and the panel's opinion in this case should be further reminder to both trial counsel and trial court judges that closing arguments are not an opportunity for "anything goes" and vilification rhetoric. Likening a defendant to "Big Brother" or using terms like "enterprise of death" and "last refuge of the scoundrel" are inappropriate, even during closing argument when attorneys are "afforded great latitude." *See Murphy v. Int'l Robotic Sys., Inc.*, 766 So. 2d 1010, 1028 (Fla. 2000) ("Attorneys should be afforded great latitude in presenting closing argument, but they must 'confine their argument to the facts and evidence presented to the jury and all logical deductions from the facts and evidence.'").

In *Kaplan*, we concluded "Plaintiff's counsel took a calculated risk that he could make . . . a circuitous comparison to Tobacco acting like Nazis and get away with it." 2021 WL 2559664, at *4. One would think that an appellate court would not have to inform counsel or trial court judges of the inappropriateness of comparing the opposing party, directly or circuitously, to historical or fictional villains, such as the Nazis and Big Brother. Likewise, comparisons to the Taliban, Isis, Al Qaeda, Stalin, Pol Pot, Bull Connor, the Unabomber, Cruella de Vil, Hannibal Lecter, the Wicked Witch, Simon Legree, vampires, and zombies are also off limits. *This is not an exhaustive list.*

In responding to defense counsel's objection in *Kaplan*, Mr. Schlesinger claimed to be using the *Schindler's List* reference to make the point that, like the list of "the 800 names they're going to pull out of the concentration camp and save the lives[,]" the "list of rulings [that make up the *Engle*[1] findings is] . . . an absolute good" for jurors. *Id.* at *2. The irony in Mr. Schlesinger wrongfully choosing to use a movie dealing with the Holocaust to make this point is that the underlying argument, skipped of the theatrics, is correct—our supreme court's *Engle* findings provide for the important foundational arguments advanced by a plaintiff's case in a wrongful death suit against the tobacco companies.

Going forward, trial counsel are cautioned to avoid making a mountain out of a molehill and employing a strategy of twisting and challenging innocuous and inoffensive statements by opposing counsel. On the other hand, when opposing counsel crosses the line, to avoid further appeals based on inappropriate comments at trial and further instances of counsel later asking "was that wrong?," timely and proper objections to

---

[1] *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

unjustifiable remarks and references must be made; trial courts must sustain proper objections and provide curative instructions where appropriate; and if the cumulative effect of improper comments is "so inflammatory and prejudicial that they deny the opposing party a fair trial,"[2] a timely motion for mistrial should be made and granted.  In any case, as it should be clear at this point based on *Calloway*[3] and its (alas) ever-increasing progeny, inappropriate comments and references will not be tolerated by this court.

<div align="center">*    *    *</div>

**<div align="center">*Not final until disposition of timely filed motion for rehearing.*</div>**

---

[2] *Las Olas Holding Co. v. Demella*, 228 So. 3d 97, 107 (Fla. 4th DCA 2017) (quoting *Bakery Assocs., Ltd. v. Rigaud*, 906 So. 2d 366, 367 (Fla. 3d DCA 2005).
[3] *R.J. Reynolds Tobacco Co. v. Calloway*, 201 So. 3d 753 (Fla. 4th DCA 2016).